ARLENE FREEMAN *vs.* RALPH D. CHAPLIC, SR., & another.[1]

Worcester. September 20, 1982. — October 7, 1982.

Present: BROWN, DREBEN, & KASS, JJ.

*Guardian. Minor*, Custody. *Practice, Civil*, Guardianship proceeding.
*Parent and Child*, Custody of minor.

A child's maternal step-grandmother, although she had not been a party
to, nor entitled to notice of, guardianship proceedings under G. L.
c. 201, § 5, had standing, in view of her close relationship with the
child, to challenge the appointment of the paternal grandparents as
guardians of the child, an appointment to which the parents had as-
sented, and a probate judge had authority to reconsider the appropri-
ateness of continuing the paternal grandparents as guardians. [495-496]
A probate judge was not required to find a child's parents unfit before va-
cating the appointment of the paternal grandparents as guardians of
the child, an appointment to which the parents had assented, and ap-
pointing the child's maternal step-grandmother as guardian in their
place, where the circumstances persuasively showed the necessity for
the unconsented-to appointment. [496-500].

PETITION filed in the Worcester Division of the Probate
and Family Court Department on September 21, 1981.
The case was heard by *Conlin, J.*
*Regina Healy* for Ralph D. Chaplic, Sr., & another.
*Jeffrey Quinn* for Arlene Freeman.
DREBEN, J. The paternal grandparents of Lynn-Marie
Chaplic appeal from an order which vacated their appoint-
ment as guardians with custody of Lynn-Marie and from a
judgment which appointed Arlene Freeman, the child's ma-
ternal step-grandmother, as guardian with custody. They
argue that Arlene Freeman, not having been a party to, nor
entitled to notice of, the proceedings under G. L. c. 201,
§ 5, had no standing to challenge their appointment, which

---

[1] Muriel F. Chaplic.

was made with the consent of Lynn-Marie's parents, and that the judge had no authority to appoint as guardian of Lynn-Marie a person not chosen by her parents without finding the parents unfit. We conclude that the judge had authority to reconsider the appointment on the petition of Arlene Freeman and was not required to find Lynn-Marie's parents unfit in order to appoint Arlene Freeman as guardian.

Although the docket shows the appointment of a stenographer, the record on appeal does not include a transcript of the evidence. It does, however, include the report of a three-month investigation made by the family service department of the Probate Court pursuant to an appointment by the judge. We take our facts from the findings of the judge, except where otherwise indicated.

Lynn-Marie was born on March 7, 1970, after the separation of her parents, Ralph Chaplic, Jr., and Judith Freeman Chaplic. There were two older children of that marriage. Although custody of the older children was awarded to Ralph Chaplic, Jr., on December 12, 1969, they have lived with Ralph's parents from a time antedating the birth of Lynn-Marie. Soon after Lynn-Marie's birth, Judith "began experiencing emotional problems," and Judith and Lynn-Marie went to live with Judith's father, Lawrence Freeman, and his wife, Arlene Freeman. Arlene had married Lawrence in 1958 when Judith was ten years old.

Lynn-Marie lived with the Freemans for the next seven years except for two short periods in the summer of 1972 and the fall of 1973 when she lived with Judith. A 1973 divorce decree, which became final on March 7, 1974, awarded custody of Lynn-Marie to Lawrence and Arlene Freeman. The paternal grandparents did not object to the custody award, although prior to that date they had filed a petition to vacate the order giving custody of the other two children to their son, Ralph.[2]

---

[2] This petition, which was filed on September 9, 1972, was never allowed; however, custody of these two children was granted to the Chaplics pending a hearing on the merits.

Some time after her divorce, Judith remarried and gave birth to two more children. In September, 1977, she filed a complaint for modification seeking to gain custody of Lynn-Marie. The Freemans assented to the modification but the paternal grandparents, the Chaplics, objected. This was the first time they had shown any interest in Lynn-Marie. A guardian ad litem recommended that custody be given to Judith, and Lynn-Marie lived with Judith and her new husband until Judith and he separated in the summer of 1981. Throughout the time Lynn-Marie lived with Judith, the Freemans frequently visited the child, and Lynn-Marie often spent school and summer vacations with her maternal grandparents. After the separation of Judith from her second husband, Judith became hospitalized, and Lynn-Marie lived with an uncle and an aunt of her step-father. On September 3, 1981, Lynn-Marie moved in with Arlene Freeman. (Lawrence had died on May 1, 1981.)

Almost immediately, the Chaplics filed a petition for guardianship of Lynn-Marie to which her parents assented. Notice of the petition was not given to Freeman, nor do §§ 2 and 5 of G. L. c. 201, provide for such notice.[3] On September 21, 1981, the Chaplics were appointed guardians of Lynn-Marie with custody. On October 2, 1981, Freeman sought revocation of that decree; on April 21, 1982, the decree was revoked, and she was appointed guardian with custody. A single justice of this court stayed the April 21, 1982, judgment pending appeal. Neither parent has participated in the Chaplics' appeal.

The Chaplics argue that Freeman was not a party to the proceedings below and does not have standing to seek relief after judgment under Mass.R.Civ.P. 60, 365 Mass. 828-829 (1974). They claim, moreover, that her petition failed to state a basis for revocation under that rule. We need not consider whether relief under rule 60 is also available, be-

---

[3] It is, of course, within the power of a probate judge to order notice to such additional persons who have a substantial interest in the proceedings, and in some cases, additional notice may be constitutionally required.

cause we conclude that Freeman had standing, and that the probate judge under his general equity jurisdiction in guardianship matters had authority here to reconsider the appropriateness of continuing the guardianship of the Chaplics. See generally *Guardianship of Bassett*, 7 Mass. App. Ct. 56, 65-67 (1979).

A probate judge has equitable powers under G. L. c. 215, § 6, which "complement[ ], on matters of guardianship, the powers conferred in G. L. c. 201, [§ 5]." *Bassett, supra* at 63. See *Feinberg* v. *Diamant*, 378 Mass. 131, 132, 136-137 (1979). As indicated in *Bassett*, at 64 (omitting citations to quoted material), a judge's authority is "broad and flexible enough to afford whatever relief may be necessary to protect [the minor's] interests," and is to be exercised "with an eye single to the welfare" of the minor. We have no doubt that the judge had authority to consider the complaint of Arlene Freeman, the person with whom the minor had been living at the time of the decree appointing the Chaplics as guardians, the person who had had custody of Lynn-Marie for many years pursuant to court decree and who, not having received notice, had had no opportunity to participate in the Chaplic appointment proceedings. We think Freeman's prior history with the child and the bonds of affection which evolved over the long period of time during which Freeman had legal custody gave her standing to maintain the complaint. See *Cennami* v. *Department of Pub. Welfare*, 5 Mass. App. Ct. 403, 409-415 (1977). Cf. *Adoption of a Minor*, 386 Mass. 741, 750 (1982).

A more difficult question is whether, as the Chaplics urge, the judge had to find the child's parents unfit before appointing a guardian who had not obtained their consent. They argue that despite the judge's explicit findings (and those of the investigator of the family service department) that Lynn-Marie "would be happier" and that it is in her "best interest to live with Arlene Freeman," the judge had no power to place the child in the custody of Freeman.

The relevant portion of G. L. c. 201, § 5, is set forth in the margin.[4] Under that statute, before a court may order that custody be taken away from a natural parent, the parents must be found to be unfit — a "strong word." *Richards v. Forrest*, 278 Mass. 547, 552 (1932). *Bezio v. Patenaude*, 381 Mass. 563, 575-576, 578 (1980). See *Custody of a Minor*, 383 Mass. 595, 601 (1981). See also *Santosky v. Kramer*, 455 U.S. 745, 760 & n.10 (1982). In view of the serious nature of the unfitness required under these authorities, we decline to read into the judge's findings, as the appellee suggests,[5] a determination that the parents are unfit. Compare *Custody of a Minor*, 383 Mass. at 602.

We hold, however, that the consent by Lynn-Marie's parents to the Chaplics' having custody is not determinative and that the judge was not required to find the parents unfit before appointing Freeman.

---

[4] General Laws c. 201, § 5, as amended through St. 1978, c. 381, § 1, reads: "The guardian of a minor shall have the custody of his person and the care of his education, except that the parents of the minor, jointly, or the surviving parent shall have such custody and said care unless the court otherwise orders. The probate court may, upon the written consent of the parents or surviving parent, order that the guardian shall have such custody; and may so order if, upon a hearing and after such notice to the parents or surviving parent as it may order, it finds such parents, jointly, or the surviving parent, unfit to have such custody; or if it finds one of them unfit therefor and the other files in court his or her written consent to such order."

[5] To support that position, the appellee relies on the following findings:
"The natural father, Ralph Chaplic, Jr. was not present at any of the court hearings and has not shown any great interest in the child Lynn-Marie. The natural mother, Judith Freeman Chaplic McDonald was adopted by the Respondents in February of 1982. Judith is under psychiatric care at this time and is also taking medication for emotional illness. . . . It is true that [Lynn-Marie's] father and mother assented to the guardianship petition. However, the father lives in Florida and really has little to do with her. He never has. The mother is a drinker who is emotionally disturbed. She is now living with the Chaplics. She is very insecure and needs to attach herself to persons for affection and security."
"We also note that the judge found that Judith's "illnesses have caused her to be hospitalized several times over the years and made her unable to assume primary care for most of Lynn-Marie's life.""

We note first that under G. L. c. 201, § 5, a judge is not required to give custody to a guardian who has obtained the consent of a minor's parents. That statute, see note 4, *supra,* provides that the court *may* order that the guardian have custody. Read together with G. L. c. 201, § 33, as appearing in St. 1956, c. 314, § 12, which provides for the removal of an "unsuitable" guardian, and interpreted, as required, "with primary reference to the welfare of the child," *Bezio* v. *Patenaude,* 381 Mass. at 557, the statute demands more than a rubber stamp by the judge.

More important, the cases cited earlier, imposing a mandatory finding of unfitness, all involve the taking away of custody from a natural parent. Here, the contest is between the paternal grandparents and the maternal step-grandmother. Neither parent is seeking custody. A determination of parental unfitness to have custody is, therefore, of little relevance.

What is at stake is the weight to be given to parental consent to a guardianship by a third person. In the absence of strong reasons, the judge should, of course, defer to parental preferences. It is to be assumed that parents are normally the proper persons to make the decisions concerning their children's welfare and that their consent to a specific guardian is to be respected. This, however, is not true in all cases. Where a guardian other than a person who has obtained parental consent is appointed, the judge should enter "specific and detailed findings demonstrating that close attention has been given the evidence" and that the necessity for the appointment of another person "has been persuasively shown." *Custody of a Minor (No. 1),* 377 Mass. 876, 886 (1979). Cf. *Cennami* v. *Department of Pub. Welfare,* 5 Mass. App. Ct. at 415. We think that the judge's careful findings met this requirement and warranted the appointment of Freeman.

The force of the parental recommendations of Ralph, Jr., and Judith must be considered in the context of the evidence before the judge. Lynn-Marie never resided with her father. The investigator's report states that she does not remember

ever seeing him. The judge found that Lynn-Marie's father had "little to do with her" and had not been "present at any of the court hearings."

Lynn-Marie's mother is emotionally disturbed. See note 5, *supra*. While the judge found that "[t]he physical and psychological condition of Judith . . . does not render her incapable of assenting to the appointment of the Chaplics as Lynn-Marie's guardians," he also found that Judith, who was living with the Chaplics, is "very insecure and needs to attach herself to persons for affection and security." This finding may take on additional meaning in light of certain statements in the investigator's report which are set forth in the margin,[6] and which suggest that Judith's consent to the Chaplics' guardianship is not without reservation.

Lynn-Marie's wishes were unhesitating. The judge found:

> "The child really wants to live with her step-[grand]
> mother Arlene Freeman. The child would be happier
> living with Arlene Freeman. . . . Lynn-Marie knows
> what she wants. She knows all parties with all their
> good points and bad. She is intelligent. She has now
> lived about eight months with the Chaplics. They are
> good to her. She gets along well with all in that house-
> hold. She is a lovely and bright young lady. She feels
> closer to Arlene Freeman and her children. She wants
> to live with Arlene Freeman, but visit the Chaplics."

A three-month investigation by the Department of Family Services, at the request of the judge, led to a report strongly urging the appointment of Freeman, stating that there is "only one logical choice."

---

[6] "The mother herself has changed her mind over where she would like Lynn placed. Originally, she had wished that the Chaplics take Lynn. But a variety of recent occurrences including her recall of 'losing' her older two children to the Chaplics 'on temporary guardianships,' make her feel uneasy about 'trusting' Mrs. Chaplic. Mrs. Chaplic evidently has been 'coaching' the mother, including what to say to this investigator about Lynn's best interest. Mrs. Chaplic has been promising the mother a great deal, which the mother now feels is not being or going to be delivered."

We also note that in contrast to an adoption, "when a guardian is appointed, the parent-child relationship remains intact." *Bezio* v. *Patenaude,* 381 Mass. at 576 n.9. The investigator reported that both Lynn-Marie and Judith wish eventually to be reunited. The judge's finding that Lynn-Marie has "a close and loving relationship" with Judith and his finding that Freeman in the past encouraged Judith to have custody of Lynn-Marie while the Chaplics opposed such custody, suggest that the guardianship of Freeman will be easily terminated if Judith can assume more responsibility.

Taking into account all these circumstances, we think the judge was not required to appoint the Chaplics and was free to appoint Freeman whom he found to be best for the interests of the child. We find nothing in G. L. c. 201, § 5, which precludes this result. See G. L. c. 215, § 6.

Accordingly, we affirm the order vacating the appointment of the Chaplics, affirm the judgment appointing Freeman as guardian with custody, and order that the rescript issue immediately.

*So ordered.*