697 P.2d 148

**CHRISTIAN PLACEMENT SERVICE, NEW MEXICO CHRISTIAN CHILDREN'S HOME, Petitioner-Appellee,**

v.

**Kevin J. GORDON, Respondent.**

**In the Matter of the ADOPTION OF John DOE, a child, Delores Wiley, Intervenor-Appellant.**

**No. 7717.**

Court of Appeals of New Mexico.

Feb. 28, 1985.

Duane S. Hamar, Aldridge, Harding, Aycock & Actkinson, Portales, for petitioner-appellee.

Randy Knudson, Doerr & Knudson, P.A., Portales, for intervenor-appellant.

## OPINION

ALARID, Judge.

Delores Wiley, Intervenor-Appellant, appeals from the trial court's denial of her motion to set aside a decree terminating the parental rights of her son and the denial of her motion to intervene in proceedings concerning the adoption of her grandchild. On appeal, Wiley raises three issues: 1) whether Wiley has standing to attack the termination of her son's parental rights; 2) whether the district court's termination of Wiley's son's parental rights is void because of insufficient notice or the unconstitutionality of NMSA 1978, Section 40-7-6(A)(2) (Repl.Pamp.1983); and 3) whether the trial court abused its discretion in failing to allow Wiley to intervene in proceedings for the adoption of her grandson for the purpose of contesting custody. We decide that Wiley lacks standing as a grandparent or as a personal representative, that the issue of notice and constitutionality is moot due to lack of standing, and that the trial court did not abuse its discretion in denying intervention in the adoption proceeding. The decision of the trial court will be affirmed.

## FACTS

John Doe was born on June 14, 1982, in Clovis, New Mexico, while both parents, who were unmarried, were stationed at Cannon Air Force Base. The natural mother arranged to have the child placed in a foster home when he was five days old.

John Doe's mother executed a relinquishment of her parental rights and a consent to adoption on June 21, 1982, and on November 4, 1982, Christian Placement Service of the New Mexico Christian Children's Home (Home) filed a petition to terminate the parental rights of the father, Kevin Gordon, who had been transferred to England. The decree terminating Gordon's parental rights and placing the child with the Home was entered on August 26, 1983. Gordon died on September 4, 1983, and

Wiley was appointed, in Indiana, administratrix of his estate.

On November 18, 1983, an adoption petition was filed by the foster parents, and on November 29, 1983, Wiley moved to intervene in the adoption proceedings "for the purpose of allowing here [sic] to file her motion to stay, and for such other and further relief as the Court deems proper." On January 25, 1984, a motion to stay was filed, asking the court to stay proceedings in the adoption action until a motion for revivor and motion to set aside the decree in the termination matter, which she filed in the termination of the parental rights case, had been disposed of by the court.

On March 23, 1984, the district court entered orders in the adoption and termination proceedings which denied Wiley's motions and granted the Home's motion to dismiss for lack of standing, from which Wiley appeals.

## I. WILEY'S STANDING TO CHALLENGE THE TERMINATION OF HER SON'S PARENTAL RIGHTS

Wiley argues that the termination of Gordon's parental rights should be set aside because he did not receive adequate notice. The district court did not address this issue for two reasons. First, the district court granted the Home's motion to dismiss for lack of standing. Second, the district court ruled that Gordon's parental rights became moot upon his death.

The standing issue has two parts: first, an analysis of Wiley's right, as grandmother, to attack the termination of Gordon's parental rights; and, second, an analysis of whether Wiley, as Gordon's personal representative, may assert his rights after his death.

### A. STANDING AS A GRANDPARENT

Wiley does not argue that she was entitled to notice or an opportunity to be heard in the termination proceeding. She was afforded no such right under the applicable statute. *See* NMSA 1978, § 40–7–4(G) (Supp.1984). There is no New Mexico case authority on the question of whether grandparents have a right to participate in proceedings which seek to terminate their children's parental rights. However, cases from other jurisdictions indicate that, absent special circumstances, no such right exists. *See In re Interest of S.R.*, 217 Neb. 528, 352 N.W.2d 141 (1984) (grandparents, as such, do not have standing to interfere with the process of termination of parental rights); *Graham v. Children's Services Division, Department of Human Resources*, 39 Or.App. 27, 591 P.2d 375 (1979) (grandparents have no standing, in general, to appeal from an order terminating the parental rights of the parent of their grandchildren); *DY.F.S. v. D.T.*, 171 N.J. Super. 520, 410 A.2d 79 (1979) (grandparent not entitled to intervene in action to terminate natural parents' parental rights); *compare In Interest of J.R.*, 315 N.W.2d 750 (Iowa 1982) (grandparents did have right to intervene in termination proceeding where statute expressly gave grandparents right to serve as custodians or guardians of children after termination); *cf. In re J.S.*, 404 So.2d 1144 (Fla.App.1981) (since district court took adequate steps to insure the disclosure of all relevant information, it was not an abuse of discretion to refuse to allow grandmother to intervene in dependency proceeding); *In re P.W.*, 670 S.W.2d 563 (Mo.App.1984) (trial court in neglect proceeding did not err in denying intervention by grandparents in neglect proceeding where the grandparents' position was adequately presented). Significantly, Wiley does not contend that her interests should have been considered in the termination proceeding; rather, she argues only that her son's right to notice was violated.

 Wiley first argues that the steps undertaken to notify Gordon were not adequate. Wiley, as grandmother, does not have standing to make this argument because questions regarding service of process are personal to the person upon whom service was attempted and generally cannot be raised by others. *See Koven v. Saberdyne Systems, Inc.*, 128 Ariz. 318, 625 P.2d 907 (1980); 62 Am.Jur.2d *Process* § 158 (1972). Wiley also argues that, to

the extent that Section 40–7–6(A)(2) may not have required her son's consent to adoption, it is unconstitutional. As grandmother, Wiley also lacks standing to make this argument. The constitutionality of a legislative act is only open to attack by a person whose rights are affected thereby. *State v. Marchiondo*, 85 N.M. 627, 515 P.2d 146 (Ct.App.1973). Therefore, Wiley had no personal standing as a grandmother to collaterally attack the validity of the termination decree.

## B. STANDING AS A PERSONAL REPRESENTATIVE

Wiley also argues that she is entitled, as her son's personal representative, to attack the termination decree. Wiley cites NMSA 1978, Civ.P. Rule 60(b)(4) (Repl.Pamp.1980), which states that the court may relieve a party "or his legal representative" from a void judgment. The Home argues that parental rights are personal and do not extend beyond death. It is unnecessary to consider either Wiley's authority as administratrix of the estate under Indiana law or the nature of parental rights, because there is nothing indicating an estate interest in the termination of Gordon's parental rights. Wiley does not contend that she seeks to protect any estate interest. We only need to examine the relief requested by Wiley, recognize that the requested relief does not pertain to the estate, and determine that Wiley is acting for herself and not as the personal representative of her deceased son's estate. In such capacity, as we discussed in the previous section, she lacks standing.

■ In addition, there are compelling public policy reasons why the personal representative of a deceased parent should not be able to collaterally attack a termination of the deceased parent's parental rights. Termination proceedings involve a delicate balance between the welfare of the child and the right of the parent to raise his or her children. *See State ex rel. Department of Human Services v. Natural Mother*, 96 N.M. 677, 634 P.2d 699 (Ct.App. 1981). On the other hand, a deceased parent's estate obviously has no right to raise the children. Under these circumstances, it is contrary to the primacy of the child's interests, *see* Section 40–7–4(A), to allow the estate to hinder proceedings which seek to provide an appropriate disposition for the child. The trial court is affirmed as to Wiley's standing as a personal representative.

## C. MOOTNESS

The district court also held that the validity of the termination of Wiley's son's parental rights was moot. If Wiley did not have standing to attack the termination of her son's parental rights, the mootness issue normally would not need to be reached. However, much of the analysis under this issue also applies to the question of whether Wiley had an interest in the adoption proceedings to justify intervention under NMSA 1978, Civ.P. Rule 24(a) (Repl.Pamp. 1980).

■ District courts have power to decide only actual controversies. *See Mowrer v. Rusk*, 95 N.M. 48, 618 P.2d 886 (1980). The district court reasoned that since Wiley's son's consent was not needed for the adoption, Section 40–7–6(A)(2), the termination decree no longer had any practical significance. Wiley argues that the issue was not moot because the question of whether her son's parental rights were properly terminated affected her right to contest the adoption. Wiley concedes that a grandparent has no natural or inherent right to custody as against the rights of a third party who is seeking to adopt the child. *See In re Adoption of Doe*, 89 N.M. 606, 555 P.2d 906 (Ct.App.1976). Wiley argues, however, that the legislature intended to confer certain rights upon grandparents by enacting the Visitation by Grandparents Act, NMSA 1978, Sections 40–9–1 to –4 (Repl.Pamp.1983). Citing Section 40–9–4, Wiley contends that her rights to visitation end with the termination or relinquishment of the natural parent's parental rights. Thus, Wiley seems to be arguing that if her son's parental rights were never terminated, she has a right to

petition for visitation, and that this right required the district court to allow intervention in the adoption proceeding so that Wiley could protect that right.

Section 40–9–2 provides: "If one or both parents of a minor child is deceased and the minor is in the custody of a surviving parent *or any other person other than an adoptive parent,* any grandparent of the minor may petition the district court for visitation privileges with respect to the minor." (Emphasis added.) On its face, this section seems to support Wiley's argument, i.e., visitation rights do survive the death of the natural parents. On the other hand, Section 40–9–4 provides: "The act [40–9–1 to 40–9–4 NMSA 1978] shall have no application in the event of a relinquishment or termination of parental rights in cases of statutory adoption proceedings." These sections leave two important questions unanswered: first, assuming that both parents' rights have been relinquished or terminated, whether grandparents may petition for visitation until the child is adopted; second, assuming that a deceased parent's rights were never terminated, whether the surviving parent's relinquishment of parental rights deprives the grandparents of their right to petition for visitation before adoption.

■ The answer to the first question is that statutory visitation rights do not apply in adoption proceedings after the termination of the natural parents' rights. The greater number of courts which have addressed the question have come to a similar conclusion: courts are not free to intervene on behalf of relatives who seek visitation rights after an adoption decree which terminates parental rights. *Ex Parte Bronstein,* 434 So.2d 780 (Ala.1983); *Poe v. Case,* 263 Ark. 488, 565 S.W.2d 612 (1978); *Lee v. Kepler,* 197 So.2d 570 (Fla.App. 1967); *In re Adoption of Schumacher,* 120 Ill.App.3d 50, 75 Ill.Dec. 926, 458 N.E.2d 94 (1983); *Matter of Adoption of Gardiner,* 287 N.W.2d 555 (Iowa 1980); *Browning v. Tarwater,* 215 Kan. 501, 524 P.2d 1135 (1974); *Smith v. Trosclair,* 321 So.2d 514 (La.1975); *Bikos v. Nobliski,* 88 Mich.App.

157, 276 N.W.2d 541 (1979); *People ex rel. Levine v. Rado,* 54 Misc.2d 843, 283 N.Y. S.2d 483 (1967); *Acker v. Barnes,* 33 N.C. App. 750, 236 S.E.2d 715 (1977).

■ Many of these cases rely on the rationale that an adoption terminates the relationship between an adopted child and his or her natural parents. Such a rationale would support the conclusion that when termination has occurred and adoption proceedings are pending, the legislature also intended that the visitation rights provided by statute to natural grandparents would also end. This result is dictated in New Mexico by Section 40–9–4. We hold that the fact that no adoption decree has yet been entered is irrelevant where the termination has occurred and adoption proceedings are pending. *See In re Ditter,* 212 Neb. 855, 326 N.W.2d 675, 676–77 (1982).

With respect to the second question, there is persuasive authority to the effect that grandparents are bound by effective consent of the parents, or surviving parent, to adoption. *See In re Nicholas,* 457 A.2d 1359 (R.I.1983) (grandfather had no standing to participate in adoption proceeding where natural father had decided not to contest stepparent adoption); *Hayes v. Watkins,* 163 Ga.App. 589, 295 S.E.2d 556 (1982) (grandparents are properly denied the right to intervene in an adoption proceeding where at least one of the natural parents is alive and has consented); *Lockey v. Bennett,* 244 Ga. 339, 260 S.E.2d 56 (1979) (maternal grandparents were not entitled to intervene in adoption proceedings where parents were living and consented to the adoption); *Mead v. Owens,* 149 Ga.App. 303, 254 S.E.2d 431 (1979) (grandparents have standing to contest adoption only if no father or mother is living); *Hester v. Mathis,* 147 Ga.App. 257, 248 S.E.2d 538 (1978) (trial court erred in allowing paternal grandfather to file objections to adoption where natural parent was living); *see also Muggenborg v. Kessler,* 630 P.2d 1276 (Okl. 1981) (consent to adoption by natural parents or surviving parent may not ordinarily be defeated by opposition from a grandparent). If the holding of these cases was

applied to this case, then Wiley would have no right to protect in the adoption proceeding, irrespective of whether her son's parental rights were terminated.

■ We conclude that the issue of the validity of the termination of Wiley's son's parental rights is moot. As a grandparent, Wiley had no right to protect in the adoption proceedings. *Adoption of Doe.* Therefore, she has demonstrated no error in the trial court's ruling. Wiley's right to petition for visitation rights did not survive the relinquishment of parental rights and the consent to adoption of the only surviving parent.

### D. CONSTITUTIONALITY OF SECTION 40–7–6(A)(2)

Wiley argues that Section 40–7–6 is unconstitutional in that it does not require the consent of an unwed father. Given that Wiley had no standing to make this argument, this issue will not be reached. *Huey v. Lente,* 85 N.M. 597, 514 P.2d 1093 (1973) (constitutional questions will not be decided unless necessary to a disposition of the case).

### II. INTERVENTION IN THE ADOPTION PROCEEDING

After ruling that the termination issue was moot and after granting the Home's motion to dismiss for lack of standing, the trial court ruled that all of Wiley's other motions had been waived. Thus, the trial court found it unnecessary to decide whether Wiley, notwithstanding her inability to attack the termination of her son's parental rights, should have been allowed to intervene pursuant to Rule 24.

It is not clear either from the orders or the transcript exactly why the trial court felt that the motion to intervene had been waived. The Home argues that the motion was waived because at the January 26 hearing the following exchange took place between the judge and Wiley's counsel:

THE COURT: * * * All right, you say you want to argue only the Motion to Set Aside the Decree by Default today?

MR. KNUDSON: Yes, Your Honor.

The Home also argues waiver because Wiley's counsel stated, "[W]e originally thought that we would want to revive this cause of action, but I believe that's up to the Christian Placement Service if they want to attempt to revive the action." Waiver cannot be based upon this last statement because from the context of the statement it is clear that counsel was speaking of the termination action and was not waiving the motion to intervene. Therefore, waiver would have to be based upon the exchange between the trial judge and Wiley's counsel.

■ "Waiver" is the intentional relinquishment or abandonment of a known right. *Wells Fargo Bank v. Dax,* 93 N.M. 737, 605 P.2d 245 (Ct.App.1979). Waiver should not be implied contrary to the intent of the party whose rights are affected unless prejudice would result to the opposing party. *Brown v. Jimerson,* 95 N.M. 191, 619 P.2d 1235 (1980).

■ The following statements show that Wiley's counsel repeatedly asserted Wiley's right to intervene in the adoption proceeding:

But essentially what we intend to do here today is to ask the Court * * * to allow us to intervene * * * to allow us to have a custody hearing to see what is in the best interest of this young child * *.

* * * * * *

[T]he only thing we are really asking the Court today to allow us to do is to present a case for the best interests of the child * * *. We feel that we can provide the best home for the child, and we are merely asking the Court to allow us an opportunity to present evidence and an opportunity to that effect.

* * * * * *

She merely asks the Court to allow her to intervene * * *.

* * * * * *

All we are asking the Court to do is set aside the decree of termination * * * and

allow us an opportunity to intervene into the adoption proceeding.

Although arguing that the motion was waived, appellee's counsel acknowledged that the motion was argued. Under these circumstances, the trial court erred in ruling that the motion to intervene was waived.

## A. INTERVENTION OF RIGHT

Rule 24 provides for intervention as of right and for permissive intervention. Rule 24(a) deals with intervention of right as follows:

> Upon timely application anyone shall be permitted to intervene in an action:
>
> (1) when a statute confers an unconditional right to intervene, or
>
> (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

■ For the reasons discussed above, Wiley could not intervene as of right. Simply by virtue of her status of grandparent, she had no right to custody. *Adoption of Doe.* Moreover, because the parental rights of one parent had been terminated, and the other parent had relinquished her rights and consented to the adoption, the trial court was not authorized to grant visitation rights. Under these circumstances, Wiley was not entitled to intervene as a matter of right. *See Krieg v. Glassburn,* 419 N.E.2d 1015 (Ind.App.1981) (grandparents had no right to intervene in adoption proceeding even though their visitation rights would be terminated); *Petition of Benavidez,* 52 Ill.App.3d 626, 10 Ill.Dec. 362, 367 N.E.2d 971 (1977) (grandparents had no right to intervene in adoption proceeding); *Hayes v. Watkins* (grandparents had no right to intervene when at least one parent is alive and has consented to the adoption); *Lockey v. Bennet* (same as *Watkins*); *Mead v. Owens* (same as

*Watkins*); *but see Quarles v. French,* 272 Ark. 51, 611 S.W.2d 757 (1981) (grandparents were entitled to intervene but decision was expressly limited to the situation where the grandparents stand in loco parentis and had been granted visitation rights).

## B. PERMISSIVE INTERVENTION

There are situations where it might be in the best interests of the child to allow intervention. *Cf. Freeman v. Chaplic,* 14 Mass.App. 493, 440 N.E.2d 1185 (1982), *rev'd on other grounds,* 388 Mass. 398, 446 N.E.2d 1369 (1983) (children's maternal stepgrandmother who had custody for many years could challenge the appointment of the paternal grandparents as guardians); *Herod v. Davidson,* 650 S.W.2d 501 (Tex.Civ.App.1983) (by alleging that they had continuous custody of their grandson for years and provided his support, grandparents could intervene in the parent's divorce proceeding in order to be appointed managing conservators).

■ In this case, however, Wiley failed to notify the trial court of sufficient reasons to allow intervention. Rule 24(c) specifies that a motion for intervention "shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought." The only grounds stated in Wiley's motion were that her son's parental rights were improperly terminated. Since Wiley had no standing to make this argument, the motion did not state adequate grounds to justify intervention. Not until the motion hearing did Wiley assert that she desired to intervene on the basis of the best interests of the child. This belated "best interests" claim was that Wiley could provide the "best home." Wiley's requested, but refused, findings indicate that Wiley desired to intervene in the adoption proceedings in order to seek custody of the child. In advancing this claim, Wiley did not assert any prior relationship with the child. The trial court could properly view the claims made at the time of the motion

hearing as being based on the status of grandparent.

In exercising its discretion as to a permissive intervention, Rule 24(b) states, "the court shall consider whether the intervention will unduly delay ... the adjudication of the rights of the original parties." The trial court did not abuse its discretion in denying intervention on a ground first asserted at the motion hearing when this ground asserted was based on the grandparent status and not any actual relationship.

Each party shall bear its own costs on appeal.

The Clerk of the Court of Appeals is instructed to correct the filing of the trial court's orders in Cause No. 82SA–14 which were misfiled in Cause No. 83SA–18.

IT IS SO ORDERED.

WOOD and MINZNER, JJ., concur.