835 P.2d 849

**In re GUARDIANSHIP OF SABRINA MAE D., Petitioner–Appellant.**

**No. 13347.**

Court of Appeals of New Mexico.

April 30, 1992.

Certiorari Denied June 3, 1992.

Joel Jasperse, Northern New Mexico Legal Services, Gallup, for petitioner-appellant.

Gary Fernandez, Grants, for respondents-appellees.

## OPINION

DONNELLY, Judge.

Petitioner appeals from an order denying her petition for a writ of habeas corpus to obtain custody of her nine-year-old daughter, and granting Petitioner's father and stepmother's (Grandparents) counterclaim for guardianship of the child. We discuss: (1) whether the district court's 1988 order appointing Grandparents guardians of the child was void for lack of jurisdiction; and (2) whether the district court had jurisdic-

tion in the instant case to continue custody of the child in Grandparents and to appoint them as guardians. We reverse and remand for further proceedings consistent with this opinion.

FACTS

Petitioner, a resident of California, contacted Grandparents in 1988 and arranged for her daughter to stay with them in New Mexico. Petitioner informed Grandparents that she believed the police were investigating her for the possession or sale of drugs. The child was sent to New Mexico on August 15, 1988. Shortly after the child's arrival, Grandparents filed a petition (Cause No. CB–88–19–PB) on September 23, 1988, with the district court in Cibola County requesting that they be appointed as guardians of the child, and alleging that they were unable to locate Petitioner at any known address and that service by publication "would not serve * * * the interest of [Grandparents or Petitioner in notifying] * * * mother of this action." No copy of the petition or summons in the action was served upon Petitioner.

At the time of filing the petition in the 1988 action, Grandparents attached an undated document signed by Petitioner authorizing them "to sign any papers for medical reasons." This document contained an address for Petitioner and a telephone number. Grandparents obtained an order appointing them as guardians of the child on the same day their petition was filed. On September 27, 1988, Petitioner mailed a document to Grandparents which stated that she was giving them temporary custody of her daughter "until further written agreement." No subsequent written consent to custody of the child was given by Petitioner.

On June 10, 1989, Petitioner came to New Mexico, obtained the child, and returned with her to California. Grandfather testified that Petitioner stated that she was going to take the child on a vacation and that thereafter they could pick up the child in California and return with her to New Mexico. After returning to California, however, Petitioner failed to relinquish custody of the child to Grandparents or make

any effort to contact them. On September 12, 1989, Grandparents petitioned the California Superior Court for custody of the child based upon the 1988 order of guardianship issued by the New Mexico court. Pursuant to an order of the California Superior Court, Grandparents obtained physical custody of the child the following day and returned with her to New Mexico.

On February 12, 1990, Petitioner filed a petition for writ of habeas corpus in the present case to obtain custody of the child. Grandparents responded by filing an answer and a counterclaim denying Petitioner's right to custody, alleging that she was unfit, and requesting that they be appointed guardians of the child. At the hearing on the merits, Grandfather testified, among other things, that the child's natural father was deceased; that Petitioner frequently changed her place of residence; and that she had previously used controlled substances. Grandparents also introduced evidence that prior to the time the child had been sent to stay with them, the child had been abused and neglected while in Petitioner's custody; that the child was underweight and in need of medical and psychological care; and that the child had been sexually abused by Petitioner's boyfriend, and that such abuse and neglect would in all likelihood continue if the child was returned to Petitioner.

At the conclusion of the hearing, the district court adopted findings of fact and conclusions of law, and entered a judgment denying Petitioner's petition for writ of habeas corpus and granting Grandparents' counterclaim for guardianship of the child. In adopting its findings, the court found that it had personal jurisdiction over Petitioner and the child; that the court had subject matter jurisdiction to hear Grandparents' counterclaim for guardianship in the instant case; that Petitioner had consented to the 1988 guardianship petition by Grandparents; that the child had been abandoned, abused, and neglected and would continue to be abused if returned to Petitioner's custody; and that it was in the child's best interests that she remain in the custody of Grandparents. Based upon its

findings and conclusions, the court entered an amended judgment denying Petitioner's petition for writ of habeas corpus and granting Grandparents' counterclaim for guardianship.

DISCUSSION

Petitioner's arguments asserted on appeal are interrelated. She contends that the order appointing Grandparents guardians of her daughter in 1988 was void because Grandparents failed to obtain service upon her. She also argues that because the New Mexico court did not have jurisdiction in Cause No. CB–88–19–PB to appoint Grandparents as guardians of the child, the order appointing them as guardians in that case was improperly used by Grandparents in California to regain custody of the child. She further asserts that the district court in the present case abused its discretion in refusing to dismiss Grandparents' counterclaim for appointment as guardians because the court's decision in this case relied in part on the mistaken assumption that the prior 1988 guardianship order was valid. Petitioner additionally argues that the district court in the present case erred in failing to find that under Section 40–10–9 of the New Mexico Child Custody Jurisdiction Act (CCJA), NMSA 1978, §§ 40–10–1 to –24 (Repl.Pamp.1989), California was the home state of the child.

I.  *Was the 1988 Guardianship Order Valid?*

Petitioner claims that the district court in the instant case erred in failing to return custody of the child to her and in issuing its order appointing Grandparents as guardians of the child because the 1988 guardianship proceeding was void. Petitioner primarily argues that the district court in the 1988 proceeding lacked jurisdiction because she did not receive proper service notifying her of the action. Grandparents claim that the district court in both New Mexico proceedings had jurisdiction over the child and Petitioner under the CCJA.

▌ It is undisputed that Petitioner was never served with notice of the pendency of the guardianship proceedings in the 1988 action prior to the issuance of the order appointing Grandparents as guardians. We agree that because Grandparents failed to obtain proper service upon Petitioner in the initial guardianship proceeding, or to obtain her valid written entry of appearance or waiver of service in such action, Petitioner was not precluded from challenging the validity of the 1988 guardianship decree. A guardianship action which deprives a parent of custody of a minor child without notice and opportunity to be heard does not bar the parent from challenging such order and asserting his or her right to custody. See *Guardianship of Debbie V.*, 182 Cal.App.3d 781, 227 Cal. Rptr. 554 (1986); *Ex parte Englebert*, 70 S.D. 467, 18 N.W.2d 794 (1945). See generally J. Sherman, Annotation, *Right of Parent to Notice and Hearing Before Being Deprived of Custody of Child*, 76 A.L.R. 242 (1932).

▌ Section 40–10–5 of the CCJA provides:

Before making a decree under the Child Custody Jurisdiction Act, reasonable notice and opportunity to be heard shall be given to ... any parent whose parental rights have not been previously terminated and any person who has physical custody of the child. If any of these persons are outside New Mexico, notice and opportunity to be heard shall be given pursuant to Section [40–10–6]. ...

Section 40–10–6(A) of the CCJA also specifies that "[n]otice required for the exercise of jurisdiction over a person outside New Mexico *shall be given in a manner reasonably calculated to give actual notice * * *.*" (Emphasis added.) We think it is clear that where jurisdiction is sought to be established under the CCJA, a petitioner must obtain service upon the other parties entitled to such notice by affirmatively undertaking to give notice and obtain service upon other interested parties as contemplated by Section 40–10–6. Grandparents failed to comply with the provisions of Section 40–10–6 prior to obtaining appointment as guardians in the 1988 proceeding.

Similarly, we also agree with Petitioner that service of process was not made in the

1988 proceeding upon her as required by the Probate Code. NMSA 1978, Section 45–5–207(A)(3) (Repl.Pamp.1989) requires that notice to a living parent "is to be given by the petitioner in the manner prescribed by Section [45–1–401]." NMSA 1978, Section 45–1–401(A) (Repl.Pamp.1989) authorizes notice to be given by certified, registered, or ordinary first class mail; in the manner authorized by the Rules of Civil Procedure for service of summons and complaint in civil actions; or by publication if the address of the party to be served cannot be ascertained with reasonable diligence. Grandparents claim that they could not serve Petitioner because she did not provide them with a current address. However, it is undisputed that the document given to Grandparents authorizing them to sign papers for medical reasons included Petitioner's address and telephone number, and Grandparents made no attempt to notify Petitioner in any way, including publication.

■ Grandparents alternatively argue that even if service was not properly obtained upon Petitioner in the 1988 guardianship proceeding, she nevertheless waived notice and service of process therein because she expressly consented to Grandparents' appointment as guardians. To support this argument, Grandparents point to Petitioner's failure to object to their appointment as guardians and to two documents written by Petitioner that purportedly gave Grandparents full custody of the child. We find nothing in the record to support a finding that Petitioner waived service or notice of the proceedings therein. *See* NMSA 1978, § 45–1–402 (Repl.Pamp.1989) (waiver of notice must either be in writing signed by individual and filed in the proceeding, or shown by party's appearance in the proceeding); *see also Elder v. Park*, 104 N.M. 163, 717 P.2d 1132 (Ct.App.1986) (absent reasonable notice to contestants in custody proceeding and opportunity to be heard, decree may be unenforceable). Additionally, we conclude that Petitioner's handwritten document authorizing Grandparents to sign any necessary papers for "medical reasons" for the child was insufficient to constitute consent

to relinquish complete custody of her child to Grandparents. Nor was such document sufficient to constitute a valid waiver of notice or consent by her to submit to jurisdiction under Section 40–10–6(D). *See Christian Placement Serv., N.M. Christian Children's Home v. Gordon*, 102 N.M. 465, 697 P.2d 148 (Ct.App.1985) (waiver involves intentional abandonment of known right). Grandparents further argue that the document dated September 27, 1988, stating that they had temporary custody of the child "until further written agreement," indicates that Petitioner waived notice and service of process. However, Section 45–1–401(C) requires that "[p]roof of the giving of notice shall be made on or before the hearing and filed in the proceeding." This document is dated four days after the guardianship hearing and was never filed. Thus, it was insufficient to provide a basis for a waiver on the part of Petitioner to the guardianship action.

Grandparents also contend that the September 27, 1988, document dated four days after their appointment as guardians, consenting that they have temporary custody of the child "until further written agreement," is independently enforceable in contract against Petitioner. None of the authorities cited by Grandparents, however, supports a finding that such an agreement was sufficient to confer jurisdiction over Petitioner in the 1988 guardianship action. Since Grandparents failed to obtain service of process upon Petitioner or a waiver thereof, as required by the Probate Code or the CCJA, we conclude that the judgment in the 1988 proceeding was subject to challenge by Petitioner. *See Normand v. Ray*, 107 N.M. 346, 758 P.2d 296 (1988) (judgment of adoption procured without adequate service of process held void); *cf. State ex rel. Hockenhull v. Marshall*, 58 N.M. 286, 270 P.2d 702 (1954) (natural father who was not served with notice of guardianship proceedings initiated by great-grandparents for appointment as guardians of child held entitled to hearing on his right to custody as matter of right).

Having found that the 1988 order appointing Grandparents as guardians of the child was subject to challenge by Petitioner, we next examine the effect of this determination upon the district court's judgment entered in the instant case.

## II. Counterclaim for Award of Guardianship

Petitioner challenges the validity of the order entered in the present case denying her petition for habeas corpus and appointing Grandparents guardians of her child. She contends that the district court in this proceeding was not vested with jurisdiction under Section 40–10–4 of the CCJA or under NMSA 1978, Section 45–5–204 (Repl.Pamp.1989) of the Probate Code, empowering it to grant Grandparents' counterclaim for guardianship.

■ In advancing these arguments, Petitioner claims that the district court erred in failing to determine under the CCJA that California is the home state of the child and that New Mexico was not the proper forum to entertain Grandparents' action for guardianship. Based upon the record before us, we think the district court in the instant case was properly invested with jurisdiction to determine custody issues involving the child. Even if we were to assume arguendo that Petitioner had a right to preemptive jurisdiction in California under the CCJA, we conclude that the district court here could properly determine that she lost such right by combination of her failure to pursue her remedies in California and her decision to file her habeas corpus petition in New Mexico. *See Slidell v. Valentine,* 298 N.W.2d 599 (Iowa 1980). Petitioner's voluntary placement of her child with Grandparents in this state, and allowing the child to remain in New Mexico for almost ten months prior to seeking her return, provides a proper basis for the court's determination that the child had a significant connection with this state so as to enable the court to exercise jurisdiction over the child. Moreover, because Petitioner initiated custody proceedings in this state, Grandparents were entitled to assert their defenses to Petitioner's claims, in fact

or law, in an answer and by counterclaim. *See* SCRA 1986, 1–012(B) (Cum. Supp. 1991); *see also Oleen v. Oleen,* 15 Utah 2d 326, 392 P.2d 792 (1964) (involving petition for habeas corpus filed by grandparent and counterclaim for custody of minor child by natural father).

The habeas corpus petition brought by Petitioner sought to have the district court return the child to her custody. Her petition alleged, among other things, that Grandparents were unfit to have custody and control of the child; that she is the proper person to be awarded custody; and that the best interests and welfare of the child would be furthered by returning her to the Petitioner's custody. Thus, Petitioner raised the very issues she now claims the district court had no jurisdiction to decide.

■ The best interests of the child also constitute an important factor in resolving jurisdictional issues. *See* § 40–10–8(B) (finding of inconvenient forum may be made on motion of guardian ad litem); § 40–10–8(C) (court in resolving issue as to whether New Mexico is an inconvenient forum must also consider whether it is in the interests of the child that another state assume jurisdiction). The child's welfare is a prime consideration irrespective of the legal rights of the competing parties. *See Normand v. Ray; see also Greene v. French,* 97 N.M. 493, 641 P.2d 524 (Ct.App. 1982) (best interest of the child is always a fundamental consideration in the determination of custody).

■ We agree with Grandparents that the district court correctly concluded that it had jurisdiction in the present case under the provisions of the CCJA. The CCJA grants jurisdiction in the district court to make decisions involving child custody. § 40–10–4. Although the Act does not expressly refer to guardianship proceedings of children, courts in other states that have adopted the CCJA have held that the Act applies to guardianship proceedings. *In re Estate of Patterson,* 652 S.W.2d 252 (Mo. Ct.App.1983); *In re Guardianship of Wonderly,* 67 Ohio St.2d 178, 423 N.E.2d 420 (1981); *In re Guardianship of Wall-*

*ing,* 727 P.2d 586 (Okla.1986). Grandparents counterclaimed for guardianship of the child, thus making Petitioner's habeas corpus petition a guardianship proceeding.

Petitioner additionally argues that even if the district court in the present case was invested with jurisdiction under the CCJA to adjudicate Grandparents' counterclaim seeking appointment as guardians of the child, it erroneously premised its award of guardianship under authority contained in the Probate Code. A court may appoint a guardian for a minor under Section 45–5–204(A) of the Probate Code "if all parental rights of custody have been terminated or suspended by [1] circumstances or [2] [by] prior court order." *Id.; see also In re Guardianship Petition of Lupe C.,* 112 N.M. 116, 812 P.2d 365 (Ct.App.1991).

Because we have determined that the guardianship order issued by the court in the 1988 action was voidable as against Petitioner, it cannot be considered a valid order terminating her right to custody of the child under Section 45–5–204(A). Additionally, since Petitioner contested Grandparents' appointment as guardians of the child in the present case, her right to custody could not be deemed to have been "suspended by circumstances" within the contemplation of Section 45–5–204(A). *See In re Guardianship Petition of Lupe C.* (adoptive mother's custody rights to child not subject to involuntary divestiture under Probate Code); *see also In re Guardianship of Aschenbrenner,* 182 Mont. 540, 597 P.2d 1156 (1979) (guardianship proceeding is not proper means to involuntarily terminate parent's right to custody of children); *In re Guardianship of Marshall,* 731 P.2d 5 (Wash.Ct.App.1986) (same); *cf. Stansell v. Superior Court,* 125 Ariz. 82, 607 P.2d 959 (1980) (en banc) (parents' rights held suspended by circumstances when parents consent to appointment of guardian); *In re Guardianship of Diamond,* 109 Idaho 409, 707 P.2d 520 (Ct.App.1985) (parents' rights are deemed suspended by circumstances when whereabouts of parents are unknown).

Although the initial order of guardianship in the 1988 proceeding did not bar Petitioner from seeking custody in this action, we think it is clear that the district court had jurisdiction under the CCJA to determine whether it should continue custody of the child in Grandparents. *See* § 40–10–4(A). Section 40–10–4(A)(3)(b) provides that a district court of New Mexico has jurisdiction to "make a child custody determination by initial decree or modification decree of a prior decree of another court" if "the child is physically present in New Mexico and * * * it is necessary in an emergency to protect the child because [she] has been subjected to or threatened with mistreatment or abuse or is otherwise neglected[.]" We believe the child's presence in New Mexico and Grandparents' allegations that the child had been previously abused while in Petitioner's custody were sufficient to confer jurisdiction to determine child custody in the district court pursuant to Section 40–10–4(A)(3).

In New Mexico, while a district court is invested with subject matter jurisdiction to grant a petition for guardianship of a minor or to adjudicate custody disputes between parents and non-parents involving children, except as provided in the Children's Code, NMSA 1978, Section 32–1–58 (Repl.Pamp.1989), over objection of a parent, guardianship proceedings are not the proper means to involuntarily terminate a parent's right to custody of his or her children. *In re Guardianship of Aschenbrenner.* In adjudicating competing custody claims between a parent or parents, and third parties, if the court determines that a child's custody should be placed with a non-parent, it is not a requirement that the court also issue letters of guardianship to the parties awarded custody. Although custody issues constitute a component of guardianship proceedings involving a minor child, the court may award or continue custody in third parties without issuing letters of guardianship. *See Shorty v. Scott,* 87 N.M. 490, 535 P.2d 1341 (1975) (discussing factors to be considered in child custody dispute between parent and grandparents); *see also In re Green,* 178 Neb. 207, 132 N.W.2d 380 (1965) (writ of habeas corpus is proper proceeding for

deciding custody of child between parent and grandparent).

In *Shorty* our supreme court recognized that in child custody cases, where the opposing parties consist of a natural parent or parents on one side and the grandparents or other persons having no permanent or legal right to the custody of the child on the other, a district court has jurisdiction to adjudicate the child's custody. In such cases, a presumption exists that "the welfare and best interests of the minor child will best be served in the custody of the natural parents and casts the burden of proving the contrary on the non-parent." *Id.,* 87 N.M. at 493, 535 P.2d at 1344; *see also Greene v. French* (burden is on non-parent in child custody case to produce current evidence of parent's unfitness); *cf. Fisher v. Fisher,* 99 Nev. 762, 670 P.2d 572 (1983) (welfare of child is superior to claim of parent in dispute between parent and non-parent).

■ Here, there is no evidence that Petitioner's parental rights were "terminated" by prior court order or "suspended by circumstances" under Section 45–5–204(A) of the Probate Code. The court's order in the instant case appointing Grandparents guardians of the child was erroneously premised on a finding that the 1988 order issued in the initial guardianship proceedings was enforceable against Petitioner and that appointment of Grandparents as guardians in this case was authorized under Section 45–5–204(A). We conclude these errors necessitate reversal of the court's judgment and remand for a new trial on Petitioner's application seeking custody of the child. On remand, Grandparents should be permitted to amend their counterclaim to seek the issuance of letters of guardianship pursuant to the provisions of the Children's Code, *see In re Guardianship Petition of Lupe C.,* or, alternatively, to seek award of child custody without seeking their appointment as guardians of the child, *see Shorty v. Scott.* Because of the nature of the competing custody claims, on remand, the district court should determine whether appointment of a guardian ad litem is necessary to protect the interests of the child. *Cf. Lopez v. Lopez,* 97 N.M. 332, 639 P.2d 1186 (1981) (court should determine whether best interests of child require appointment of guardian ad litem to protect child's interests).

Because we determine that the amended judgment should be reversed and remanded for a new trial, we do not address Petitioner's other contentions regarding the sufficiency of the evidence.

CONCLUSION

The amended judgment is reversed and the cause is remanded for further proceedings consistent herewith.

IT IS SO ORDERED.

APODACA and CHAVEZ, JJ., concur.