1998-NMCA-003

952 P.2d 463

### In the Matter of the GUARDIANSHIP OF ASHLEY B.G., A Child,

### MARLAINE F.G., Petitioner–Appellant,

### v.

### Yolanda FASTLE and James Fastle, Respondents–Appellees.

### No. 17977.

Court of Appeals of New Mexico.

Nov. 6, 1997.

Jose L. Martinez, Richard A. Gonzales, Vicki Plevin, Practicing Law Student, Yvette Gonzales Miller, Practicing Law Student, Mary E. Humphrey, Practicing Law Student, UNM Clinical Law Programs, Albuquerque, for Appellant.

John F. Moon Samore, Albuquerque, for Appellees.

Judy Bailey, Cedar Crest, Guardian ad litem.

## OPINION

WECHSLER, Judge.

1. In this permanent guardianship proceeding involving Ashley B.G., we review whether the child's natural mother received adequate notice and opportunity to be heard. Deciding that the record does not support a finding either that she did or that she waived such notice, we reverse the order of permanent guardianship and remand to the district court for it to decide after an evidentiary hearing whether it should continue the temporary guardianship or issue a permanent guardianship consistent with the best interests of the child.

2. While she was pregnant, Mother was convicted of a felony in New Mexico, incarcerated, and sent to a group home in Texas. Still in custody, she gave birth to a daughter on April 6, 1991 and arranged for a Texas couple to temporarily care for the baby during the week while Mother cared for her on weekends. The group home closed in May 1991, and Mother returned to the Bernalillo County Detention Center (BCDC). She left the child in the Texas couple's care. When the Texas couple expressed its desire to either adopt the child or discontinue caring for her, Mother placed the child in the care of her sister and brother-in-law, the present Guardians. At that time, Mother signed a document titled "Consent to Guardianship."

3. Approximately one month later, while Mother was still at BCDC, Guardians filed a petition for permanent guardianship of the child. Although Guardians mailed notice of the proceedings to the putative father in Florida, they did not serve Mother. The children's court held a hearing at which Guardians and their attorney appeared. It granted the petition for permanent guardianship finding that Mother had given her consent to the guardianship.

4. In August 1994, after Mother was released from custody, she filed a motion to reopen the permanent guardianship, seeking

only visitation. Pending the hearing on the merits, the parties entered into a stipulated order for increased visitation. The day before the scheduled hearing, the parties entered into an additional stipulated order that again increased visitation. Thereafter, the parties signed a third stipulated order for referral to counselling to "reconcile issues surrounding the visitation, support and custody" of the child. Apparently counselling failed because Mother filed a motion to revoke the order granting permanent guardianship which she followed with a motion to set aside the permanent guardianship judgment under Rule 1–060(B), NMRA 1997. She asserted among other reasons that the judgment was void because the court lacked personal jurisdiction due to Guardians' failure to serve Mother with notice of the proceeding.

5. The children's court denied Mother's motion to set aside the judgment. It found that Mother was not provided with notice of the proceeding. It nevertheless concluded that Mother's stipulations regarding visitation and counselling in the proceedings constituted proper notice to her of the proceedings and an affirmation by her that the guardianship is valid. According to the court, the stipulations cured any constitutional defect caused by the failure to give notice. Mother appealed the denial of both motions.

■ 6. We review the children's court's refusal to set aside a judgment under Rule 1–060(B) under the abuse of discretion standard. See James v. Brumlop, 94 N.M. 291, 294, 609 P.2d 1247, 1250 (Ct.App.1980). We agree with Mother that the children's court abused its discretion in refusing to grant the motion.

■ 7. Those petitioning for guardianship of a child must serve notice upon the child's parents following the rules of civil procedure for the district courts for the service of process in a civil action. NMSA 1978, § 32–1–59(D) (1987) (current version at NMSA 1978, § 32A–4–32(D) (1993)); NMSA 1978, § 45–5–207(A)(3) (1975); see also In re Laurie R., 107 N.M. 529, 534, 760 P.2d 1295, 1300 (Ct.App.1988) ("Procedural due process requires notice to each of the parties of the issues to be determined and opportunity to prepare and present a case on the material

issues."). The children's court found and Guardians do not dispute that Mother did not receive notice. Instead, the children's court found and Guardians argued that Mother waived any notice defect in the guardianship proceeding by her subsequent stipulations regarding visitation. Although a party may waive notice by written stipulation or voluntary appearance, we do not agree that Mother did so in this case. See NMSA 1978, § 32–1–20(E) (1972) (current version at NMSA 1978, § 32A–1–12(E) (1995)); NMSA 1978, § 45–1–402 (1995).

8. As part of her motions, Mother argued that she did not give her consent to guardianship with the intent to create a permanent guardianship. Her affidavit attached to her motion to set aside the judgment stated: "Had I been notified of the March 26, 1992 Petition, the January 8, 1993 Request for Hearing, or the February 19, 1993 Hearing I would have contested the proposed Permanent Guardianship."

■ 9. For Mother to validly waive notice, she must have (1) intentionally (2) relinquished or abandoned (3) a known right. Christian Placement Serv. v. Gordon, 102 N.M. 465, 471, 697 P.2d 148, 154 (Ct.App. 1985); see In re Guardianship of Sabrina Mae D., 114 N.M. 133, 137, 835 P.2d 849, 853 (Ct.App.1992). No evidence directly indicates that Mother intentionally consented to a permanent guardianship or that she knew of her rights. In the "Consent for Guardianship" document which Mother signed, Mother gave her voluntary and unequivocal consent to the guardianship, but the document is silent as to the nature of the guardianship. In the consent document, Mother states that she has examined the alternatives to guardianship, but again the document does not mention the type of guardianship contemplated or the alternatives addressed. Without clarification, the "Consent for Guardianship" does not indicate the full nature of Mother's knowledge of her rights or of the intentional act which she performed.

10. Under the children's code, Mother's rights are protected by statutorily required notice of, and a hearing on, the issue of her consent to the petition for permanent guard-

ianship. *See* § 32–1–59(D). When on notice, if she does not believe that she has agreed to permanent guardianship, she can present testimony to the children's court. On the other hand, if she does not appear, the children's court can properly conclude that her consent was inclusive. When, as here, the consent is not tightly drafted, without notice to Mother the children's court cannot reasonably conclude that Mother gave consent to permanent guardianship. While the children's court has an obligation to ensure its grant of a permanent guardianship is primarily in the best interests of the child, the court also is required to protect the rights of the parents. *See* NMSA 1978, § 32–1–2(E) (1989) (current version at NMSA 1978, § 32A–1–3(B) (1993)) (The legislative purpose is "to provide judicial and other procedures through which the provisions of the Children's Code are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights are recognized and enforced."); *In re Guardianship of Arnall*, 94 N.M. 306, 308, 610 P.2d 193, 195 (1980) (when mother was never given notice that continuation of her parental rights were at issue, court found her due process rights were violated).

11. The children's court found, and Guardians contend, that the stipulations which Mother signed after the order for permanent guardianship affirmed the validity of the guardianship order. Yet the subsequent stipulated orders did not evidence any more knowledge or intent than the original consent. The first two stipulated orders increased Mother's visitation. The third stipulated order referred the parties to counselling to reconcile visitation, support, and custody issues. Each of the stipulations stated that the parties' actions "shall not affect the structure and permanence of the existing guardianship order dated February 19, 1993." Although Mother knew of the permanent guardianship order when she entered into these stipulations, the stipulation language merely preserves the status quo while the parties continue to litigate the issues between them. The strength of the stipulation is no greater than the guardianship order or its original foundation, the consent to guardianship. Mother's knowl-

edge and intent still require clarification particularly when she has asserted that her original consent was different from that attributed to her by the court in her absence.

■ 12. Although a parent may voluntarily waive the jurisdictional requirement of notice in proceedings involving the parent and child relationship, this Court has not looked favorably upon implied waiver. *See In re Guardianship of Sabrina Mae D.*, 114 N.M. at 137, 835 P.2d at 853. In *In re Guardianship of Sabrina Mae D.*, the guardians asserted that the mother had waived her notice and service of process by granting the guardians written permission to sign for medical treatment and by sending a written statement that she was granting the guardians temporary custody. *Id.* We followed the provisions of the probate code involving guardianship of a minor, § 45–5–207(A)(3), and notice, NMSA 1978, §§ 45–1–401, –402 (1975), and held that the medical authorization document was not a valid waiver under Section 45–1–402 (waiver of notice must either be in writing signed by individual and filed in the proceeding, or shown by parties' appearance in the proceeding). *In re Guardianship of Sabrina Mae D.*, 114 N.M. at 136–37, 835 P.2d at 852–53. We further concluded that the consent to temporary custody did not constitute waiver as it was not filed until after the hearing. *Id.* at 137, 835 P.2d at 853; *see* § 45–1–401(C) (proof of giving of notice shall be made on or before the hearing and filed in the proceeding).

■ 13. We are reluctant to accept the children's court's inference of waiver from Mother's actions in the case on appeal as well. Despite her entry of appearance and participation in the stipulated orders, Mother's involvement in the case did not begin until nearly one and one-half years after the entry of the permanent guardianship order. Because waiver is a voluntary act, courts should not find that a party has impliedly given it when it is contrary to the parties' rights absent prejudice to the opposing party. *See Brown v. Jimerson*, 95 N.M. 191, 192, 619 P.2d 1235, 1236 (1980) (citing *Ed Black's Chevrolet Ctr., Inc. v. Melichar*, 81 N.M. 602, 604, 471 P.2d 172, 174 (1970)).

Guardians have the obligation to provide Mother notice of the guardianship proceedings; they did not. They were not prejudiced under the circumstances.

14. As there is nothing in the record on which the children's court could have validly found that Mother waived notice and opportunity to present her case concerning the guardianship petition, we set aside the order granting the permanent guardianship and remand to the children's court for a determination of the best interests of the child under the statutory provision found in the old children's code. *See* § 32–1–59; *see also* N.M. Const. art. IV, § 34 ("No act of the legislature shall affect the right or remedy of either party, or change the rules of evidence or procedure, in any pending case."); *Gray v. Armijo,* 70 N.M. 245, 253, 372 P.2d 821, 827 (1962) (same); *In re Samantha D.,* 106 N.M. 184, 186–87, 740 P.2d 1168, 1170–71 (Ct.App. 1987) (best interests of child is paramount consideration). Mother did, however, give her consent that Guardians should have at least temporary guardianship. As a result, Guardians shall continue to have temporary guardianship subject to Mother's visitation pending the children's court's determination concerning the child's best interests. *See In re Adoption of J.J.B.,* 119 N.M. 638, 655, 894 P.2d 994, 1011 (1995) (where adoption voided, Supreme Court held, "Physical custody shall remain with the [adoptive parents], if they so choose, pending resolution of the custody issue by the trial court."). Finally, nothing would preclude the children's court from inquiring into the nature of Mother's consent and deciding the case in accordance therewith if the evidence would support a finding that Mother in fact knowingly consented to a permanent guardianship.

*Conclusion*

15. As Guardians did not provide Mother notice of the permanent guardianship proceeding and the record does not support the finding that Mother waived her right to such notice, the children's court abused its discretion in denying Mother's motion to set aside the judgment of permanent guardianship. We reverse and remand for further proceedings consistent with this opinion. Although

Mother requested oral argument, we deem it unnecessary.

16. **IT IS SO ORDERED.**

DONNELLY and PICKARD, JJ., concur.