*In re* ADOPTION OF JONATHAN KEITH RUIZ (Amy Ruiz *et al.*, Petitioners-Appellants, v. Adoptive Parents of Jonathan Keith Ruiz, Respondents-Appellees (Pamela Ann Ruiz, Petitioner)).

First District (2nd Division) No. 87—2334

Opinion filed December 22, 1987.—Rehearing denied January 20, 1988.

SCARIANO, P.J., specially concurring.

Beermann, Swerdlove, Woloshin, Barezky & Berkson, of Chicago (Howard A. London, of counsel), for appellants.

Watson & Sims, of Flossmoor (Murray W. Sims, Jr., of counsel), for appellees.

JUSTICE STAMOS delivered the opinion of the court:

Amy and Charles Ruiz, the petitioners-appellants and maternal grandparents of Jonathan Keith Ruiz (Jonathan), appeal from the trial court's denial of their motion for leave to file a petition for the adoption of Jonathan and their motion to consolidate their adoption action with, or to intervene in, the action filed by the respondents to adopt Jonathan. Jonathan's mother and petitioners' daughter, Pamela Ruiz (Pamela), surrendered Jonathan for adoption. Shortly thereafter, the respondents filed a petition to adopt Jonathan. The respondents have declined to reveal their identities. The appellate court, however, concurs with the trial court's decision to preserve the anonymity of the respondents. The petitioners subsequently discovered that Jonathan was placed for adoption and that the respondents had filed a petition to adopt Jonathan. The petitioners moved the trial court for leave to file a petition for the adoption of Jonathan and to consolidate their adoption action with, or to intervene in, the action that the respondents had filed. The trial court denied the petitioners' motions and the petitioners appealed.

On May 19, 1986, 19-year-old Pamela gave birth to Jonathan. Pamela and Jonathan lived with the petitioners from the date of Jonathan's birth until sometime in February 1987. On February 18, 1987, Pamela signed a final and irrevocable consent for the adoption of Jonathan. When the court asked Pamela why she was giving Jonathan up for adoption, she answered: "Because I'm too young; I can't give him what he wants. My boyfriend left me. If he goes to another family, he will have a father. I just can't handle him by myself. I'm too young."

The petitioners were unaware that Pamela had gone to court on February 18 to surrender Jonathan for adoption. Pamela stated that she did not tell her parents (petitioners) because Pamela's mother

would not have allowed Pamela to place Jonathan for adoption even though Pamela believed that it was the right thing to do. After Pamela placed Jonathan for adoption, she planned to move to Arizona and live there with a friend.

A couple, unknown to the petitioners, filed a petition to adopt Jonathan. The adoptive parents-respondents are represented by counsel in this litigation. The petitioners claim that they did not become aware that Jonathan had been placed for adoption until late March 1987. At this time, the petitioners retained counsel. The petitioners filed a petition and in count II sought visitation with Jonathan. In count I of that same petition, Pamela moved to vacate her surrender and consent and the interim order. On June 4, 1987, the respondents filed a motion for summary judgment. Motion for summary judgment was granted as to count I on July 20; the petitioners moved for the voluntary dismissal of count II and it was granted on July 21.

Thereafter, the petitioners retained new counsel. On June 30, 1987, the petitioners' new counsel filed a petition to adopt Jonathan. On July 20, 1987, the petitioners moved to consolidate their petition for adoption with the action to adopt Jonathan filed by the adoptive parents or, in the alternative, to allow the petitioners to intervene in that action. On July 20, 1987, the trial court entered an order denying the petitioners' motions. On July 22, 1987, the petitioners filed notice of this appeal.

■■ The first issue is whether the petitioners-grandparents may *file* a petition for the adoption of Jonathan. Illinois law provides the answer to this question. In pertinent part, section 5 of the Adoption Act states:

> "A proceeding to adopt a child, other than a *related* child, shall be commenced by the filing of a petition within 30 days after such child has become available for adoption, provided that such petition may be filed at a later date by leave of court upon a showing that the failure to file such petition within such 30 day period was not due to the petitioners' culpable negligence or their wilful disregard of the provisions of this Section. A petition to adopt an adult or a *related* child may be filed at any time. A petition for adoption may include more than one person sought to be adopted." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 40, par. 1507.)

Furthermore, Illinois law defines a "related" child as:

> "a child subject to adoption where either or both of the adopting parents stands in any of the following relationships to the child by blood or marriage: parent, grand-parent, brother, sis-

ter, step-parent, step-grandparent, step-brother, step-sister, uncle, aunt, great-uncle, great-aunt, or cousin of first degree. A child whose parent has executed a final irrevocable consent to adoption or a final irrevocable surrender for purposes of adoption, or whose parent has had his or her parental rights terminated, is not a related child to that person." (Ill. Rev. Stat. 1985, ch. 40, par. 1501B.)

In sum, the grandparents of a child are related to that child. Ill. Rev. Stat. 1985, ch. 40, par. 1501; *Freeman v. Settle* (1979), 75 Ill. App. 3d 799, 803, 393 N.E.2d 1385; *In re Adoption of Smith* (1976), 38 Ill. App. 3d 217, 227-28, 347 N.E.2d 292.

■ Both of the petitioners, Amy and Charles Ruiz, are the maternal grandparents of Jonathan. In July of 1987, the petitioners sought leave to file a petition to adopt Jonathan. Based upon the definition set forth above, the petitioners are related to Jonathan. The petitioners, therefore, need not meet the 30-day filing deadline that is required of unrelated persons.

Despite the clarity of the law on this point, the petitioners classify themselves as unrelated persons and believe that the 30-day filing requirement applies to them. The petitioners, however, argue that although they did not meet the 30-day filing deadline, they should still be permitted to file a petition to adopt Jonathan because they can show that their failure to file within the 30 days was not due to their culpable negligence or wilful disregard of section 5. Not surprisingly, the respondents never address the issue of whether the petitioners are related to Jonathan.

In addition, the petitioners contend that they have a constitutional right to file their petition for adoption. The petitioners cite several United States Supreme Court decisions that recognize a right to familial privacy and association. The petitioners claim that these cases stand for the proposition that familial privacy and association is one of the liberties that the due process clause of the fourteenth amendment protects. The petitioners thus conclude that the due process clause of the fourteenth amendment gives them a constitutional right to file their adoption petition. Because this court has determined that the petitioners have a statutory right to file their petition to adopt Jonathan, this court need not determine whether the petitioners have, in addition, a constitutional right. Therefore, the question of whether the petitioners have a constitutional right to file their adoption petition will not be answered here.

■ In conclusion, the petitioners are related to Jonathan. Consequently, the petitioners are not burdened with any time limitation as

to when they may file their petition to adopt Jonathan. We hold, therefore, that the petitioners have a statutory right to file a petition to adopt Jonathan.

The second issue is whether the petitioners may intervene, either as a matter of right or permission, in the respondents' action to adopt Jonathan. The Illinois Code of Civil Procedure (the Code) sets forth the rules for both intervention as a matter of right and intervention as a matter of permission. Illinois law provides:

"(a) Upon timely application anyone shall be permitted as of right to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody or subject to the control or disposition of the court or a court officer.

(b) Upon timely application anyone may in the discretion of the court be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common." Ill. Rev. Stat. 1985, ch. 110, pars. 2—408(a), (b).

 The purpose of intervention is to expedite litigation. (*Bishop v. Village of Brookfield* (1981), 99 Ill. App. 3d 483, 487, 425 N.E.2d 1113.) This goal is achieved through disposition of the entire controversy among the persons involved in one action so as to prevent a multiplicity of actions. (*Bishop*, 99 Ill. App. 3d at 487.) In construing Illinois law that governs intervention, Illinois courts have held that before a party is allowed to intervene, that party must show that it has an enforceable or recognizable right, not simply a general interest, in the subject matter of the proceeding. (*Gray v. Starkey* (1976), 41 Ill. App. 3d 555, 559, 353 N.E.2d 703.) Furthermore, "a party without custody or other legal rights to a child has no right to intervene in a proceeding brought by some other persons to adopt that child." *Gray*, 41 Ill. App. 3d at 559-60, citing *Cooper v. Hinrichs* (1957), 10 Ill. 2d 269, 140 N.E.2d 293.

 The first question is: Do the petitioners have a right to intervene in the respondents' pending adoption case? Grandparents may not intervene in a pending adoption case as a matter of right. (*In re Adoption of Oliva* (1977), 52 Ill. App. 3d 626, 630, 367 N.E.2d 971.) The petitioners here contend that they should be allowed to intervene

in respondents' pending action as a matter of right. The petitioners cite Federal Rule of Civil Procedure 24(a) (Rule 24(a)) to support their claim that the petitioners have a right of intervention. Rule 24(a) is similar to section 2—408(a) of the Illinois Code of Civil Procedure and thus the petitioners rely on two Federal cases to further support their contention. See *United States v. Stringfellow* (9th Cir. 1986), 783 F.2d 821; *Lake Investors Development Group, Inc. v. Egidi Development Group* (7th Cir. 1983), 715 F.2d 1256.

In *Stringfellow*, the United States and the State of California brought an action against 31 parties who were allegedly responsible for the release of hazardous wastes from the Stringfellow Acid Pits. Concerned Neighbors in Action (CNA) sought to intervene as a matter of right. CNA was a nonprofit organization that was formed to protect the health and well-being of its members from inadequate clean-up efforts of the acid pits. The district court denied CNA's motion to intervene as a matter of right. The court, however, granted CNA leave for permissive intervention but imposed conditions that CNA claimed severely limited its ability to influence the results of the litigation. On appeal, the district court was reversed and CNA was permitted to intervene as a matter of right. *Stringfellow*, 783 F.2d at 829.

In *Lake Investors*, Lake Investors Development Corporation brought an action for breach of a real estate sales contract against Egidi Development Group (Egidi). Donald Peterson (Peterson), purchaser of a security interest in the contract rights, sought to intervene as a matter of right. The district court denied Peterson's petition to intervene. On appeal, the district court was reversed and Peterson was permitted to intervene as a matter of right. *Lake Investors Development Group, Inc.*, 715 F.2d at 1261.

Neither of the Federal cases that the petitioners cite is persuasive here. In both instances, the transaction involved some type of property. In one case it was acid pits and in the other case it was a security interest. Neither case dealt with the transaction before this court—an adoption proceeding.

The respondents cite two out-of-State cases in support of their position that a grandparent does not have a statutory right to intervene in an adoption proceeding. (See *Christian Placement Service v. Gordon* (1985), 102 N.M. 465, 697 P.2d 148; *Hayes v. Watkins* (1982), 163 Ga. App. 589, 295 S.E.2d 556.) In *Gordon*, an unmarried couple gave birth to John Doe. John Doe's mother surrendered the baby and executed a consent for adoption. Thereafter, the parental rights of the father were also terminated. John Doe's foster parents filed a petition

to adopt the child. John Doe's paternal grandmother moved to intervene in the adoption; her motion was denied and she appealed. In affirming the trial court's denial of intervention, the appellate court held that the grandmother could not intervene as a matter of right. *Gordon*, 102 N.M. at 472, 697 P.2d at 155.

In *Hayes*, both parents of a five-year-old child surrendered their parental rights and consented to the child's adoption. Shortly after, an adoption proceeding took place and the child's grandparents sought to intervene. The trial court denied the motion to intervene and the grandparents appealed. In affirming, the appellate court held that grandparents have no right to intervene in an adoption proceeding where at least one of the natural parents is alive and has consented. *Hayes*, 163 Ga. App. at 589, 295 S.E.2d at 557.

In light of the fact that Illinois law clearly does not give grandparents a right to intervene in an adoption proceeding, the Federal cases that the petitioners have set forth do not persuade this court to initiate any change in the existing law. The only remaining question is: Did the trial court abuse its discretion when it denied the petitioners permission to intervene in the respondents' action to adopt Jonathan? In their briefs, the parties cite a relevant Illinois intervention case. See *In re Adoption of Oliva* (1977), 52 Ill. App. 3d 626, 367 N.E.2d 971.

In *Oliva*, Arnuflo and Isabel Oliva (the Olivas), the maternal grandparents of Christina Marie Oliva (Christina), appealed the denial of their petition to intervene in certain adoption proceedings of Christina. The Olivas' daughter, Sylvia, gave birth to Christina out of wedlock on December 17, 1972. The Olivas contended that Sylvia surrendered and abandoned Christina to them during January 1976 and that Christina then lived with the Olivas for the next four months. Furthermore, the Olivas alleged that Sylvia told them that she would allow them to adopt Christina. However, Sylvia stipulated that the Olivas would first have to take care of Christina for a one-year "trial period" before Sylvia would allow adoption proceedings to begin. The Olivas went on vacation in June 1976. When they returned, they discovered that Sylvia had given custody and control of Christina to Christina's godparents, Thomas and Juanita Benavidez. Christina was living in her godparents' home, and in July 1976 Thomas and Juanita Benavidez filed a petition to adopt Christina. Proper adoption procedure followed and an interim order for adoption was entered on August 9, 1976. One month later, the Olivas petitioned to intervene in the adoption proceedings and presented their petition to adopt Christina. The trial court denied the Olivas' petition and the Olivas appealed.

On appeal, the Olivas contended that they should be allowed to intervene in the proceeding for several reasons. First, they were the grandparents of Christina. Second, Christina had lived with them for "great lengths of time" since Christina's birth. Third, Sylvia had promised the Olivas that she would allow them to adopt Christina.

The Olivas asserted that section 26.1(2)(b) of the Civil Practice Act (now section 2—408(b) of the Code of Civil Procedure), which allows the applicant to intervene at the discretion of the court "when an applicant's claim or defense and the main action have a question of law or fact in common," gave them the authority to intervene in the adoption proceeding. The common question of law or fact, the Olivas argued, was, Who had the right to adopt the child?

The appellate court did not agree with the Olivas' position and stated that there was no common question of law or fact in the case. The appellate court continued:

> "The question is *whether* the appellants have a preference—since on no other basis than a legal preference could they intervene, inasmuch as the adoption had already reached the point of an interim order for adoption when the petition to intervene was filed and there is no allegation of the unfitness of the adopting parents or irregularity in the adoption proceedings. We doubt that an assertion of a preference presents a common question of law or fact in an adoption proceeding merely because both parties wish to adopt the same child. The question raised by the appellants is purely adversary to the rights of the adopting parents and it is not a question common to both parties." (Emphasis in original.) (*Oliva*, 52 Ill. App. 3d at 629.)

In affirming the trial court, the appellate court concluded that the trial court did not abuse its discretion when it denied the Olivas permission to intervene in the adoption proceeding. (*Oliva*, 52 Ill. App. 3d at 629.) Believing that the trial court did abuse its discretion, Justice Nash respectfully dissented from the majority opinion. The majority, however, did not overlook the unique relationship that grandparents have with their grandchildren. The court stated:

> "We do not wish to be understood in this opinion as denigrating the natural right of grandparents to have custody of or to adopt their grandchildren in a proper case. All other things being equal, they may be the most logical persons to have custody or to adopt, and this is especially true where they have played an important part in the raising of the child. A petition to intervene by grandparents, due to their unique relationship to the child must, as it was here, be given careful consideration, for it

is implicit in their relationship to the child that they have great solicitude for the child's well being and happiness. This is well recognized in the Illinois cases. [Citations.] But, in the circumstances of this case there is no legal basis authorizing a *right* to intervene and it was a matter clearly within the discretion of the court. The circumstances were peculiar here for the evidence indicates that a sister of the child's mother also had a daughter out of wedlock and she returned home with her child, who also resides with the grandparents, who are the appellants here. It was not the normal home situation and the child's mother may well have concluded that she wished a more normal and regular situation for the upbringing of *her* child." (Emphasis in original.) *Oliva*, 52 Ill. App. 3d at 629.

■ *Oliva* is directly on point with the case at bar. In each case, the baby was born out of wedlock and lived for various periods of time with the maternal grandparents. In each case, the mother of the baby, without the maternal grandparents' knowledge, consented to placing the baby for adoption. Similarly, a couple filed a petition to adopt the child, an interim order for adoption was entered, and the "adoptive parents" were given custody of the child. Subsequently, the grandparents sought to intervene. The grandparents in *Oliva* were not allowed to intervene as a matter of right or as a matter of permission. Likewise, the petitioners before this court have no right to intervene in the adoption action, and absent an abuse of discretion on the part of the trial court, cannot intervene as a matter of permission.

In reviewing the facts of this case as set forth above, we conclude that the trial court did not abuse its discretion in denying the petitioners permission to intervene in the respondents' adoption action. We hold that the petitioners may not intervene, as a matter either of right or permission, in the respondents' action to adopt Jonathan.

In light of the foregoing, the judgment of the circuit court of Cook County is hereby reversed in part, affirmed in part, and remanded with the following directions. The petitioners shall be permitted to file their petition to adopt Jonathan; however, it is ordered that the petitioners' petition to adopt and the respondents' petition to adopt be heard before the same circuit court judge but in two separate and distinct proceedings.

Affirmed in part, reversed in part, and remanded with directions.

BILANDIC, J., concurs.

PRESIDING JUSTICE SCARIANO, specially concurring:

I agree with my colleagues that the petitioners may not intervene in the pending adoption case, and I concur also in their decision that the petitioners be permitted to file their petition to adopt and that their petition be heard separately from the one filed by the respondents but by the same judge. I should like to add my own reasons for so agreeing.

I think it safe to say that the General Assembly could not have had adoption cases in mind when it enacted the intervention and consolidation provisions of our Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, pars. 2—408, 2—1006, respectively), for neither appears to lend itself with any facility to the unique procedure required to be followed in adoption cases.

Yet it is altogether clear that the legislature has granted to grandparents not only the right to adopt a grandchild, but it has also exempted them from the 30-day requirement of section 5A (Ill. Rev. Stat. 1985, ch. 40, par. 1507A). Accordingly, I have not the organs to perceive the reasoning of the respondents herein that the "petitioners have no right to file their petition to adopt Jonathan absent leave to intervene in respondents' proceeding to adopt him." Nowhere does the adoption act make the petitioners' right contingent upon their being given leave to intervene in any pending proceeding to adopt. And it hardly needs to be said that the right to file the petition carries with it the corollary right that the petition be heard, for surely the legislature could not have intended that the mere filing of the petition should be the end and all of the right to do so.

Therefore, although we permit the petitioners to file their petition to adopt without according them the intervention or the consolidation they seek, the hearing on their petition and upon that of the respondents should afford the trial court the benefit of all of the evidence it will need in order that it might fulfill its solemn duty of deciding what is in the best interest of this infant child for the remainder of the very long life ahead of him.