NO. 4-05-0464     Filed 8/2/06

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE ILLINOIS DEPARTMENT OF HEALTHCARE | ) | Appeal from |
| AND FAMILY SERVICES ex rel. DEBBIE | ) | Circuit Court of |
| STOVER, | ) | Adams County |
|     Petitioner-Appellee, | ) | No. 96F44 |
|     v. | ) | |
| EVERETT L. WARNER, | ) | Honorable |
|     Respondent-Appellant. | ) | Scott H. Walden, |
| | ) | Judge Presiding. |

_____

JUSTICE COOK delivered the opinion of the court:

In March 1996, the trial court ordered respondent, Everett L. Warner, to pay child support for his two children. On October 24, 2002, his parental rights as to those children were terminated. On May 6, 2005, the court denied Warner's petition to vacate the child-support order. He appeals. Because section 17 of the Adoption Act relieves natural parents whose parental rights have been terminated of parental responsibility for their child (750 ILCS 50/17 (West 2004)), we reverse.

I. BACKGROUND

On February 29, 1996, the Illinois Department of Public Aid, now known as the Illinois Department of Healthcare and Family Services (Department), filed a petition on Debbie Stover's behalf to establish Everett Warner as the father of her children, C.S. (born December 12, 1993) and B.S. (born August 18, 1995). On March 28, 1996, the trial court found Warner to be the father of the children and ordered that he pay child support in the amount of $46.13 per week. The Department petitioned the court

for modification of the child-support order, and on October 7, 1999, the court increased Warner's support obligation to $120 every two weeks. In a separate proceeding, Warner's and Stover's parental rights were terminated on October 24, 2002.

On February 2, 2005, Warner filed a pro se motion to terminate his child-support obligation and recover payments retroactive to October 24, 2002. At a hearing on February 10, 2005, the Department indicated it would oppose any motion to cease support until the children were adopted and the State was no longer responsible for their support. The trial court continued the matter to allow Warner time to consult an attorney.

On March 3, 2005, Warner's attorney filed a petition to vacate the child-support order based upon section 17 of the Adoption Act, which provides:

> "After either the entry of an order terminating parental rights or the entry of a judgment of adoption, the natural parents of a child sought to be adopted shall be relieved of all parental responsibility for such child and shall be deprived of all legal rights as respects the child ***." 750 ILCS 50/17 (West 2004).

At the March 31, 2005, hearing on the petition, Warner and the Department stipulated, in relevant part, that (1) Warner continued to pay child support of $120 every two weeks even after his parental rights were terminated, (2) the children had been in

2

the custody and guardianship of the Illinois Department of Children and Family Services (DCFS) since before the date of termination, and (3) the State had received Warner's child-support payments since the date of termination. The trial court also took judicial notice of the order in the cases terminating Warner's parental rights and the most recent order in those cases showing that the goal for the children remained adoption. The only issue before the court was whether section 17 of the Adoption Act (750 ILCS 50/17 (West 2004)) relieved Warner of his obligation to pay child support.

On May 6, 2005, the trial court entered an order denying Warner's petition pursuant to the "language in Illinois Supreme Court case In re M.M., 156 Ill. 2d 53, 610 N.E.2d 702 (1993)." This appeal followed.

## II. ANALYSIS

Warner's sole contention on appeal is that section 17 of the Adoption Act requires that the trial court terminate his child-support obligation and that the court erred when, relying on M.M., it refused to do so. In response, the Department first claims that section 17 is inapplicable because the children are not in the process of being adopted. Alternatively, the Department argues that the Illinois Supreme Court has determined that section 17 does not eliminate a natural parent's common-law duty to support a child in times of need regardless of whether parental termination or adoption has severed other parental responsibilities and rights. Because both the applicability of section

17 of the Adoption Act and whether Warner owes his children a common-law duty of residual support present questions of law, our review is de novo. See In re Marriage of Rogers, 213 Ill. 2d 129, 135-36, 820 N.E.2d 386, 389-90 (2004).

A. Applicability of Section 17

Section 17 of the Adoption Act provides that "the natural parents of a child sought to be adopted" are relieved of parental responsibility "[a]fter either the entry of an order terminating parental rights or the entry of a judgment of adoption." 750 ILCS 50/17 (West 2004). The Department urges that section 17 does not relieve Warner of his responsibility to pay child support because he is not the natural parent of "a child sought to be adopted," as no evidence before the trial court suggested that anyone was seeking to adopt either child.

Section 17 does not provide that natural parents are relieved of parental responsibility and deprived of legal rights only where their legal rights have been terminated and a specific person has expressed interest in adopting their natural child. Rather, a fair reading of the statute includes situations where a child is available for adoption, whether or not someone is actively seeking to adopt that child, and where a child has been adopted.

In this case, the trial court took judicial notice that Warner's parental rights were terminated and that the goal for C.S. and B.S. was adoption. Therefore, section 17 applies to Warner.

B. Residual Duty of Support

The trial court denied Warner's petition to vacate the child-support order, stating "[p]ursuant to the clear language in In re M.M., 156 Ill. 2d 53, 62, 619 N.E.2d 702, 708 (1993), termination of [Warner's] parental rights did not extinguish his obligation to support his children."

Generally, in the United States when an adoption occurs the adoptive parents replace the blood parents for all purposes. 2 H. Clark, Domestic Relations in the United States §21.12, at 683 (2d ed. 1987). The consequences of the adoption decree rest in the first instance upon the applicable state statute. A common form of statute in earlier days contained only a brief statement that the final decree of adoption divests the natural parents of their rights and duties. In some states, some aspects of the parent-child relationship between the adopted child and his natural parents were preserved. 2 H. Clark, Domestic Relations in the United States §21.12, at 683 (2d ed. 1987). More recent statutes, however, have generally spelled out the mandate that the adopted child will have no further rights and obligations with respect to his natural parents, with the single exception that if a stepparent adoption occurs, it does not affect the parent-child relationships between the child and his natural parent. 2 H. Clark, Domestic Relations in the United States §21.12, at 683-84 (2d ed. 1987). "[D]ifferent issues are involved in determining the best interest of the child in an adoption by strangers and in an adoption by a natural parent and

a new spouse."  <u>Lingwall v. Hoener</u>, 108 Ill. 2d 206, 213-14, 483 N.E.2d 512, 516 (1985).

Illinois has followed the national pattern.  The supreme court, in <u>M.M.</u>, noted this history in a case holding the Adoption Act did not allow a court to condition an adoption on the adoptive parents' agreement to permit contact by the minors with their biological families.

> "With the exception of the biological parents'
> residual duty to support their children (<u>Dwyer</u>
> <u>v. Dwyer</u> (1937), 366 Ill. 630, 633-34[, 10
> N.E.2d 344, 346]), and the children's right
> to inherit from and through their biological
> parents (<u>In re Estate of Tilliski</u> (1945), 390
> Ill. 273[, 61 N.E.2d 24]), adoption constitutes
> a complete and permanent severance of all legal
> and natural rights between such parents and
> children."  <u>M.M.</u>, 156 Ill. 2d at 62, 619 N.E.2d
> at 708.

The support case, <u>Dwyer</u>, involved a situation similar to a stepparent adoption, a situation where the maternal grand-parents adopted the child prior to the divorce, the grandfather died, and the natural mother readopted the child.  The court ordered the natural father to pay child support despite the adoptions, noting the statute then in existence simply relieved the natural parents of their rights, not their duties: "'The natural parents of a child so adopted shall be deprived, by the

decree, of all legal rights, as respects the child, and the child shall be freed from all obligations of maintenance and obedience as respects such parents.'"  Dwyer, 366 Ill. at 633, 10 N.E.2d at 345-46, quoting Ill. Rev. Stat. 1935, ch. 4, par. 8.  As in other states, Illinois's statute has changed.  The Adoption Act now specifically provides that the natural parents are "relieved of all parental responsibility" in addition to being "deprived of all legal rights."  (Emphasis added.)  750 ILCS 50/17 (West 2004).  Section 17 makes it "grimly clear" that "[t]ermination of parental rights destroys the parent-child relationship."  In re Adoption of Syck, 138 Ill. 2d 255, 274-75, 562 N.E.2d 174, 183 (1990) (unfitness must be proved by clear and convincing evidence; child's best interests not relevant at this stage); see also In re C.B., 221 Ill. App. 3d 686, 688, 583 N.E.2d 107, 108 (1991) (when parental rights are terminated, "[t]o be blunt, the situation is as if the parent has died").

The inheritance case, Tilliski, has experienced a similar history.  That case held that, under the statute then existing, a child who had been adopted was entitled to inherit from her natural mother who died intestate.  Tilliski, 390 Ill. at 285, 61 N.E.2d at 29.  The statute has now been changed.  "For purposes of inheritance from or through a natural parent and for determining the property rights of any person under any instrument, an adopted child is not a child of a natural parent, nor is the child a descendant of a natural parent or of any lineal or collateral kindred of a natural parent."  755 ILCS 5/2-4(d) (West

˅ 7 ˅

1998); In re Estate of Goodkind, 356 Ill. App. 3d 607, 618, 827 N.E.2d 6, 16 (2005). Where parties are divorced, and the children are adopted by the mother's new husband, however, the children may inherit from their biological father under an exception to section 2-4(d). See In re Estate of Snodgrass, 336 Ill. App. 3d 619, 621-22, 784 N.E.2d 431, 433 (2003).

The question before us must be decided by an examination of the existing statutes. See M.M., 156 Ill. 2d at 72, 619 N.E.2d at 713 ("the issue before us, though steeped in policy considerations, turns solely on an interpretation and application of our Juvenile Court Act" (emphasis in original)). Section 17 provides that natural parents whose parental rights have been terminated "shall be relieved of all parental responsibility." 750 ILCS 50/17 (West 2004). This is such a situation. Warner's parental rights were terminated in October 2002. The obligation to pay child support is a parental responsibility. Therefore, Warner's support obligation should cease.

The trial court noted that section 17 of the Adoption Act was in effect when the supreme court decided M.M. That is correct but, as we have noted, the supreme court was considering historical context in M.M. and did not attempt to address the current viability of any residual duty of support. The supreme court mentioned the residual duty to support in the course of a "general discussion concerning proceedings to terminate parental rights and the legal effect of an adoption judgment" (M.M., 156 Ill. 2d at 61, 619 N.E.2d at 707). See M.M., 156 Ill. 2d at 63,

619 N.E.2d at 708 ("[t]he narrow issue presented *** is whether the juvenile court *** may condition the court-appointed guardian's power to consent to adoption").  Section 17 of the Adoption Act is not mentioned in the opinion.  Other Illinois cases have cited Dwyer for the proposition that a natural parent has a residual duty to support his child.  See, e.g., Bachleda, 48 Ill. 2d at 19, 268 N.E.2d at 13; Lingwall, 108 Ill. 2d 206, 483 N.E.2d 512.  None of those cases, however, presented a question regarding a natural parent's support obligation or examined the issue in light of changes in the language or effect of the Adoption Act.

## III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment.

Reversed.

MYERSCOUGH and KNECHT, JJ., concur.