Filed 5/3/10 NO. 4-09-0912

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: the Adoption of S.G., a Minor, | ) | Appeal from |
| KAMETTE G. HIXSON and MICHAEL E. | ) | Circuit Court of |
| HIXSON, | ) | Champaign County |
| Petitioners-Appellants, | ) | Nos. 09AD41 |
| v. | ) | 09AD42 |
| S.G., a Minor; and THE ILLINOIS | ) | |
| DEPARTMENT OF CHILDREN AND FAMILY | ) | |
| SERVICES, | ) | |
| Respondents-Appellees, | ) | |
| and | ) | |
| DOUGLAS BAKER and AMY BAKER, | ) | |
| Petitioners-Appellees, | ) | |
| v. | ) | |
| S.G., a Minor; and THE ILLINOIS | ) | |
| DEPARTMENT OF CHILDREN AND FAMILY | ) | Honorable |
| SERVICES, | ) | Brian L. McPheters, |
| Respondents. | ) | Judge Presiding. |

_____

JUSTICE TURNER delivered the opinion of the court:

After the Champaign County circuit court terminated the parental rights of both parents of respondent, S.G. (born in September 2005), S.G.'s paternal grandparents, petitioners Kamette G. and Michael E. Hixson (hereinafter the Hixsons), filed a petition for adoption, custody, guardianship, and visitation (case No. 09-AD-41). Five days later in a separate case (case No. 09-AD-42), S.G.'s foster parents, Douglas and Amy Baker (hereinafter the Bakers), also filed a petition for adoption. On the Bakers' motion, the trial court consolidated the two cases.

The Hixsons appeal (1) the trial court's September 2009

order that dismissed with prejudice their adoption petition and (2) the court's December 2009 order that severed the consolidated cases and struck the Hixsons' response to the Bakers' adoption petition. We dismiss part of the appeal for lack of jurisdiction and affirm the trial court's judgment for which we have jurisdiction.

## I. BACKGROUND

### A. The Underlying Juvenile Case (No. 06-JA-85)

On May 22, 2008, the Champaign County circuit court entered a written order, terminating the parental rights of S.G.'s father, Justin Hixson. In re S.G., No. 06-JA-85 (Cir. Ct. Champaign Co.). The order noted the guardian administrator of respondent, the Illinois Department of Children and Family Services (DCFS), was to continue as S.G.'s guardian. In September 2008, this court affirmed that judgment. In re S.G., No. 4-08-0391 (September 22, 2008) (unpublished order under Supreme Court Rule 23). On October 28, 2008, the circuit court terminated the parental rights of S.G.'s mother, Heather Vineyard, and continued the placement of S.G.'s custody with the guardian administrator of DCFS. In re S.G., No. 06-JA-85 (Cir. Ct. Champaign Co.). In the October 28, 2008, docket entry, the circuit court authorized DCFS to appear in court and consent to S.G.'s adoption when a petition was before the court. In re S.G., No. 06-JA-85 (Cir. Ct. Champaign Co.).

At some point after the termination of Vineyard's parental rights, the Hixsons filed a petition to intervene and a petition for custody, guardianship, and visitation in case No. 06-JA-85. After an April 29, 2009, hearing, the circuit court denied the Hixsons' petition to intervene.

### B. The Hixsons' Case (No. 09-AD-41)

On May 1, 2009, the Hixsons filed the petition at issue in case No. 09-AD-41, seeking adoption, custody, and guardianship of S.G. and visitation with her. Ten days later, DCFS filed a motion to dismiss the Hixsons' petition under section 2-619.1 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-619.1 (West 2008)) and a memorandum in support of its motion. DCFS attached numerous documents from the juvenile case to its memorandum. The Hixsons filed a response to DCFS's dismissal motion, and DCFS later filed a reply.

### C. The Bakers' Case (No. 09-AD-42)

On May 6, 2009, the Bakers filed their petition to adopt S.G. The petition noted they had received custody of S.G. on October 28, 2008. On May 12, 2009, the trial court entered an interim order, granting the Bakers custody of S.G. during the proceedings and appointing a guardian _ad_ _litem_ for S.G. Nine days later, the court entered an amended interim order, appointing a different guardian _ad_ _litem_.

### D. Consolidation

- 3 -

On June 16, 2009, the Bakers filed a motion to consolidate the two adoption cases. After a June 17, 2009, hearing, the trial court granted the consolidation motion over the objection of the Hixsons. The court ordered the parties to file all pleadings in case No. 09-AD-42. The docket entry further noted the cause was continued to July 2, 2009, for a hearing on DCFS's motion to dismiss the petition in case No. 09-AD-41.

On July 1, 2009, the guardian administrator of DCFS entered her appearance and consent to the Bakers' adoption of S.G. The two documents contained both case numbers. On July 2, 2009, the trial court heard arguments on the motion to dismiss the Hixsons' petition and took the matter under advisement. The record on appeal lacks a report of proceedings for that hearing. On July 24, 2009, S.G.'s guardian ad litem filed his answer to the Bakers' petition, listing only case No. 09-AD-42.

On September 29, 2009, the trial court entered its memorandum opinion and order granting DCFS's motion to dismiss with prejudice the Hixsons' petition. The order contained the captions for both cases and noted the consolidation. The order noted the Bakers and their competing petition but did not expressly note any arguments by them. Additionally, in the order, the court stated it took judicial notice of the documents in the file, including the guardian administrator's consent to adoption by the Bakers.

On October 30, 2009, the Hixsons filed a response to the Bakers' adoption petition.

On November 2, 2009, the trial court held a status hearing, at which the Hixsons, the Bakers, DCFS, and the guardian ad litem appeared. During the hearing, the guardian ad litem emphasized he was only appointed to represent S.G. on the Bakers' petition. The Bakers first asked for a motion to sever, but the Hixsons objected because the Bakers had not filed a written motion. The court found a written motion was necessary. The Bakers then noted the Hixsons had indicated they may still appeal the dismissal of their petition. The Bakers argued the 30-day period for an appeal had already run, but if it had not, they wanted a Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)) finding. The Hixsons and DCFS contended a Rule 304(a) finding was necessary to appeal the court's September 2009 dismissal. The court stated it would make such a finding. Also, on the day of the hearing, the Bakers filed a motion to strike the Hixsons' response to their adoption petition.

On November 3, 2009, the trial court entered its written order for a Rule 304(a) (210 Ill. 2d R. 304(a)) finding, declaring no just cause existed to delay enforcement or appeal of the court's September 29, 2009, order. The Bakers also filed their motion to sever the two cases.

On November 25, 2009, the trial court held a hearing on

the motion to sever the cases and strike the Hixsons' response. The motions were addressed by the Hixsons' counsel, the Bakers' counsel, DCFS's counsel, and the guardian ad litem. After hearing the parties' arguments, the court first granted the motion to sever and then struck the Hixsons' response because the cases were no longer consolidated. The court also stayed the proceedings in case No. 09-AD-42, due to a potential appeal by the Hixsons from the dismissal of their petition. On December 1, 2009, the court entered its written judgment, granting the motions to sever the cases and to strike the Hixsons' response. The order contained a Rule 304(a) finding. Also, on December 1, 2009, the court entered a written order staying the proceedings in case No. 09-AD-42.

On December 2, 2009, the Hixsons filed a notice of appeal, stating they were appealing the trial court's September 29, 2009, dismissal of their adoption petition, and the December 1, 2009, order severing the two adoption cases and striking their response to the Bakers' petition. On appeal, the Hixsons state this court has jurisdiction to address both orders under Rule 304(a) (210 Ill. 2d R. 304(a)). DCFS and the Bakers argue Rule 304(a) does not apply and thus this court lacks jurisdiction over the Hixsons' appeal.

## II. ANALYSIS

### A. Jurisdiction

In several recent decisions, our supreme court has emphasized a reviewing court's duty to ascertain its jurisdiction before considering the appeal's merits. See Lebron v. Gottlieb Memorial Hospital, Nos. 105741, 105745 cons., slip op. at 25 (February 4, 2010), ___ Ill. 2d ___, ___, ___ N.E.2d ___, ___; People v. Lewis, 234 Ill. 2d 32, 36-37, 912 N.E.2d 1220, 1223 (2009); Secura Insurance Co. v. Illinois Farmers Insurance Co., 232 Ill. 2d 209, 213, 902 N.E.2d 662, 664 (2009); People v. Smith, 228 Ill. 2d 95, 106, 885 N.E.2d 1053, 1059 (2008). Thus, the questioning of our jurisdiction by DCFS and the Bakers is a threshold issue. See Lewis, 234 Ill. 2d at 37, 912 N.E.2d at 1223.

"The timely filing of a notice of appeal is both jurisdictional and mandatory." Secura Insurance Co., 232 Ill. 2d at 213, 902 N.E.2d at 664. Unless the appealing party has properly filed notice of appeal, a reviewing court lacks jurisdiction over the appeal and must dismiss it. Smith, 228 Ill. 2d at 104, 885 N.E.2d at 1058. Additionally, we note "appellate jurisdiction cannot be conferred by agreement, waiver, or estoppel." Physicians Insurance Exchange v. Jennings, 316 Ill. App. 3d 443, 453, 736 N.E.2d 179, 187 (2000).

### 1. September 2009 Judgment

The Hixsons contend this court has jurisdiction of the September 2009 dismissal judgment under Rule 304(a) (210 Ill. 2d

- 7 -

R. 304(a)), which governs final judgments that do not dispose of all the matters before the trial court (see <u>Hartford Fire Insurance Co. v. Whitehall Convalescent & Nursing Home, Inc.</u>, 321 Ill. App. 3d 879, 885-86, 748 N.E.2d 674, 680 (2001)).  Such final judgments may only be appealed "if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both."  210 Ill. 2d R. 304(a). When a trial court makes a Rule 304(a) finding, the appealing party has 30 days from the date of the finding's entry to file a notice of appeal.  Official Reports Advance Sheet No. 15 (July 16, 2008), R. 303(a), eff. May 30, 2008; 210 Ill. 2d R. 304(a). In this case, the trial court entered a Rule 304(a) finding on November 3, 2009, as to the court's September 2009 motion.  Thus, if Rule 304(a) applies, the Hixsons' December 2, 2009, notice of appeal was timely filed.

However, DCFS and the Bakers contend Rule 304(a) does not apply.  They assert the September 2009 order completely disposed of the Hixsons' petition as the cases' consolidation did not merge them into one suit.  Thus, the September 2009 order was a final judgment appealable under Supreme Court Rule 301 (155 Ill. 2d R. 301).  Supreme Court Rule 303 (Official Reports Advance Sheet No. 15 (July 16, 2008), R. 303, eff. May 30, 2008) governs the time for filing a notice of appeal from final judgments and requires such notice to be filed within 30 days after

- 8 -

the court's entry of judgment to be appealed when a timely postjudgment motion has not been filed. Accordingly, for us to have jurisdiction under Rule 301, a notice of appeal from the September 2009 order had to be filed by October 29, 2009.

The Hixsons challenge DCFS's and the Bakers' argument the two cases did not merge when the trial court consolidated them. Section 2-1006 of the Procedure Code (735 ILCS 5/2-1006 (West 2008)) permits a court to consolidate cases as long as a substantial right is not prejudiced. Distinct forms of consolidation exist. See Busch v. Mison, 385 Ill. App. 3d 620, 624, 895 N.E.2d 1017, 1020 (2008). One form is "[w]here a consolidation concerns several actions involving an inquiry into the same event in its general aspects and is limited to a joint trial, with separate docket entries, verdicts[,] and judgments." Nationwide Mutual Insurance Co. v. Filos, 285 Ill. App. 3d 528, 532, 673 N.E.2d 1099, 1102 (1996). With that form of consolidation, "an order dismissing one of the actions is deemed final and immediately appealable," and a Rule 304(a) finding is not required. Nationwide, 285 Ill. App. 3d at 532, 673 N.E.2d at 1102. A second form of consolidation is "[w]here several actions actually merge into one action, *** thereby losing their identity, [and] they are disposed of as one suit." Nationwide, 285 Ill. App. 3d at 532, 673 N.E.2d at 1102. With the second form, Rule 304(a) applies to an appeal from the dismissal of less than all counts.

Nationwide, 285 Ill. App. 3d at 532, 673 N.E.2d at 1102.

The Hixsons argue this case is similar to Busch, 385 Ill. App. 3d at 624-25, 895 N.E.2d at 1020-21, where the First District found the consolidated cases merged into one action. There, the record reflected the trial court consolidated the two causes into one action that was decided by one arbitration award with three separate findings. The consolidation motion argued that, "since 'both cases arise from the same set of facts and involve the same witnesses,' both lawsuits should 'be consoli-dated into one.'" (Emphasis omitted.) Busch, 385 Ill. App. 3d at 625, 895 N.E.2d at 1021. The trial court then consolidated the two cases "'for the purposes of discovery and trial.'" Busch, 385 Ill. App. 3d at 625, 895 N.E.2d at 1021.

DCFS and the Bakers contend this case is like Nation-wide, 285 Ill. App. 3d at 532, 673 N.E.2d at 1102, where the First District found the consolidated action did not merge the cases into one action. There, the motion for consolidation stated that, since "both cases involved the same parties and common questions of fact, judicial economy, the convenience of the parties, and the avoidance of inconsistent results required consolidation." Nationwide, 285 Ill. App. 3d at 532, 673 N.E.2d at 1102. The Nationwide court concluded that, "[b]ecause the consolidation was done only for convenience and economy, 'it did not merge the causes into a single suit, or change the rights of

- 10 -

the parties, or make those who were parties in one suit parties in another.'" Nationwide, 285 Ill. App. 3d at 532, 673 N.E.2d at 1102, quoting Shannon v. Stookey, 59 Ill. App. 3d 573, 577, 375 N.E.2d 881, 884 (1978).

The Bakers' June 2009 consolidation motion noted they had been S.G.'s foster parents since October 2008, received interim custody of S.G. in May 2009, and expected DCFS to consent to their adoption of S.G. The petition further noted the parental rights of S.G.'s parent had been terminated, and the birth paternal grandparents, the Hixsons, had also filed a petition regarding S.G. The Bakers alleged the consolidation of the two pending and competing adoption petitions was in S.G.'s best interests. On June 17, 2009, the trial court granted the motion over the Hixsons' objection and ordered all pleadings to be filed in case No. 09-AD-42. A review of the docket entries in both cases after the consolidation shows that, on some dates, the two cases had the same docket entry but, on other dates, the two cases had different docket entries.

The docket entry for July 2, 2009, which is only contained in the docket sheets of the Bakers' case, shows the Bakers appeared at the hearing on DCFS's motion to dismiss but S.G.'s guardian ad litem did not. We note the record lacks a transcript or other report of proceedings for that hearing (see 155 Ill. 2d R. 321; 210 Ill. 2d Rs. 323(a), (c), (d)), and the

- 11 -

Hixsons, as the appellants, had the burden of supplying a suffi-ciently complete record.  See Webster v. Hartman, 195 Ill. 2d 426, 432, 749 N.E.2d 958, 962 (2001).  Without a transcript for that hearing, we are unable to tell if the Bakers participated in that hearing or were mere spectators.  The trial court's September 2009 written order that granted the dismissal only referred to the arguments of the Hixsons and DCFS, suggesting the Bakers did not argue DCFS's motion to dismiss in the trial court.

In between the consolidation and the dismissal order, DCFS filed its consent to the Bakers' adoption, which was noted in the docket entries of both cases.  Also, the guardian ad litem in the Bakers' case filed his answer to the Bakers' petition, which is only noted in the Bakers' docket sheets.  After the dismissal, the trial court struck the Hixsons' response to the Bakers' petition and severed the case, both of which are chal-lenged by the Hixsons on appeal.

This case is clearly different from both Busch and Nationwide and does not neatly fall into either of the discussed types of consolidated cases.  As the Hixsons note, if the trial court got to the merits of the petitions, the court would make one determination regarding S.G.'s best interests.  However, the court never got to the petitions' merits.  Instead, the trial court dismissed the Hixsons' petition with prejudice a little more than three months after the consolidation.  During the

interim, the record reflects (1) the cases had different docket entries at times, (2) each set of petitioners was not treated as parties in the other case, and (3) the September 2009 order only addressed the Hixsons' petition. Additionally, the parties in the two cases are not all identical, and the court gave no indication that discovery would be joint. Importantly, S.G.'s guardian ad litem, who was appointed in the Bakers' case, did not appear at the hearing on the motion to dismiss the Hixsons' petition and emphasized he only represented S.G. on the Bakers' petition.

The record suggests that, even after consolidation, the two cases continued to have separate identities in the trial court. Besides the filing of all documents in one case, the record contains little evidence the trial court treated the two cases as one single suit. Accordingly, we find consolidation is more like the first form with the cases maintaining separate identities. Thus, a Rule 304(a) finding was not required, and the Hixsons had to file their notice of appeal by October 29, 2009. Since they did not, we must dismiss that portion of the appeal for lack of jurisdiction. See Smith, 228 Ill. 2d at 104, 885 N.E.2d at 1058.

### 2. December 2009 Judgment

DCFS also alleges the trial court's December 2009 judgment was not appealable under Rule 304(a) (210 Ill. 2d R.

- 13 -

304(a)) because the December 2009 order was an interlocutory order, not a final one.  The Hixsons did not respond to DCFS's contention.

A Rule 304(a) finding only permits an appeal from a final order in a case involving multiple parties or claims.  In re Adoption of Ginnell, 316 Ill. App. 3d 789, 793, 737 N.E.2d 1094, 1098 (2000).  The finding does not turn a nonfinal order into a final and appealable one.  A final judgment absolutely and finally fixes the rights of the parties to the lawsuit.  Ginnell, 316 Ill. App. 3d at 793, 737 N.E.2d at 1098.  Moreover, "[a judgment] is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment."  Ginnell, 316 Ill. App. 3d at 793, 737 N.E.2d at 1098.  Additionally, "[t]o be final, a judgment must dispose of or terminate the litigation or some definite part of it."  Ginnell, 316 Ill. App. 3d at 793, 737 N.E.2d at 1098.  If the trial court retains jurisdiction to determine future matters of substantial controversy, the order is not a final judgment.  Ginnell, 316 Ill. App. 3d at 793, 737 N.E.2d at 1098.

The trial court's ruling on the motion to sever did not fix the rights of any parties or terminate any part of the litigation.  The granting of the motion to sever was an interlocutory order that did not become final and appealable by the

court's Rule 304(a) finding.  Thus, we dismiss the appeal as to the trial court's ruling on the motion to sever.

The trial court's striking of the Hixsons' response to the Bakers' petition is more complex.  As we found in the previous section, the court consolidated the two cases but continued to treat them separately.  The record contains no indication the Hixsons became a party to the Bakers' petition or the Bakers became a party to the Hixsons' petition.  Thus, the Hixsons' response is akin to a petition to intervene in the Bakers' adoption petition, and the court's striking of the response is essentially the denial of a petition to intervene.  By striking the Hixsons' response, the court fixed and disposed of the Hixsons' rights in the Bakers' action.  Thus, the striking of the Hixsons' response was a final order.  See In re Estate of Mueller, 275 Ill. App. 3d 128, 139, 655 N.E.2d 1040, 1048 (1995) (denial of petition to intervene in an estate proceeding was a final judgment); Hartzell v. Hungate, 223 Ill. App. 346, 351 (1921) ("[t]he overruling of a petition to intervene is a final order").  Accordingly, the court's Rule 304(a) finding in the December 2009 order made the court's granting of the motion to strike appealable under Rule 304(a) (210 Ill. 2d R. 304(a)).

Since the Hixsons' notice of appeal complied with the requirements of Rule 304(a) (210 Ill. 2d R. 304(a)) and Rule 303 (Official Reports Advance Sheet No. 15 (July 16, 2008), R. 303,

- 15 -

eff. May 30, 2008), which addresses the timing and form of the notice of appeal, this court has jurisdiction over the trial court's grant of the motion to strike.

### B. The Striking of the Hixsons' Response

As stated, since the trial court treated the consolidated cases separately, the granting of the motion to strike is akin to the denial of a petition to intervene. This court reviews a decision on a petition to intervene under an abuse-of-discretion standard. Regnery v. Meyers, 345 Ill. App. 3d 678, 683, 803 N.E.2d 504, 509 (2003). "A trial court abuses its discretion only where its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court." In re A.W., 397 Ill. App. 3d 868, 873, 921 N.E.2d 1275, 1279 (2010).

The Hixsons contend the trial court should hear all evidence as to S.G.'s best interests and, as her paternal grandparents, they possess such information. DCFS argues the Hixsons have no right to participate in the Bakers' adoption petition.

Section 2-408 of the Procedure Code (735 ILCS 5/2-408 (West 2008)) provides for intervention as a matter of right and intervention as a matter of the trial court's discretion. See In re Adoption of Ruiz, 164 Ill. App. 3d 1036, 1040, 518 N.E.2d 436, 439 (1987). Illinois courts have held "[g]randparents may not

intervene in a pending adoption case as a matter of right."
Ruiz, 164 Ill. App. 3d at 1040, 518 N.E.2d at 439, citing In re Adoption of Oliva, 52 Ill. App. 3d 626, 630, 367 N.E.2d 971, 974-75 (1977).  As to discretion, the court may allow intervention when (1) "a statute confers a conditional right to intervene" or (2) "an applicant's claim or defense and the main action have a question of law or fact in common."  735 ILCS 5/2-408(b) (West 2008).  Regarding adoption, Illinois courts have held "[i]ntervention will be allowed only where the party has an enforceable or recognizable right, not simply a general interest, in the subject matter of the proceeding."  In re Petition of C.M.A., 306 Ill. App. 3d 1061, 1069, 715 N.E.2d 674, 681 (1999), citing Ruiz, 164 Ill. App. 3d at 1040, 518 N.E.2d at 439. Moreover, "'a party without custody or other legal rights to a child has no right to intervene in a proceeding brought by some other persons to adopt that child.'"  Ruiz, 164 Ill. App. 3d at 1040, 518 N.E.2d at 439, quoting Gray v. Starkey, 41 Ill. App. 3d 555, 559-60, 353 N.E.2d 703, 707 (1976).

It is undisputed the Hixsons do not have custody of S.G.  As to any rights to S.G., the Hixsons are S.G.'s paternal grandparents.  However, S.G.'s father's parental rights were terminated in May 2008.  Thus, the paramount issue is whether the Hixsons have any rights regarding S.G. after the termination of their son's parental rights.

When a trial court concludes a child's best interests warrant the termination of parental rights and enters an order so finding, "the parent-child relationship is permanently and completely severed." In re D.T., 212 Ill. 2d 347, 356, 818 N.E.2d 1214, 1222 (2004). We note the Hixsons' son's May 2008 termination order expressly provided "[a]ll residual, natural, parental rights and responsibilities of Justin Hixson are hereby terminated and the respondent minor is relieved of all obligations of maintenance and obedience with respect to the above-named party." Moreover, section 2-29(2) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-29(2) (West 2008)) provides that, once certain conditions are satisfied, the court may terminate parental rights and appoint a guardian of the minor's person with the power to consent to the minor's adoption. That section further provides as follows:

> "An order so empowering the guardian to consent to adoption deprives the parents of the minor of all legal rights as respects the minor and relieves them of all parental responsibility for him or her, and frees the minor from all obligations of maintenance and obedience to his or her natural parents." 705 ILCS 405/2-29(2) (West 2008).

The circuit court entered such an order in October 2008 after it

terminated S.G.'s mother's parental rights. Thus, section 2-29(2) of the Juvenile Court Act also provides the Hixsons' son's parental rights and interests were completely severed.

Additionally, this court has held a termination of parental rights ends all parental responsibility, including the common-law, residual duty of support. Department of Healthcare & Family Services ex rel. Stover v. Warner, 366 Ill. App. 3d 1178, 1182, 853 N.E.2d 435, 439 (2006), rev'd on other grounds, 227 Ill. 2d 223, 236, 882 N.E.2d 557, 564 (2008). We recognize the Third District has reached a different conclusion with regard to the support duty and adoption. See Bodine v. Bodine, 127 Ill. App. 3d 492, 496, 468 N.E.2d 1004, 1007 (1984) ("an adoption will not relinquish a natural parent's obligation to support the child if the adoptive parent is unable to do so"). Our supreme court has yet to resolve the conflict. See Warner, 227 Ill. 2d at 236, 882 N.E.2d at 564 (recognizing the conflict but declining to address it).

Moreover, when an adoption has completely severed the natural parent-child relationship, the Second District noted it naturally follows the adoption terminated the rights and interests of the natural parent's relatives in the child. In re Adoption of Schumacher, 120 Ill. App. 3d 50, 52, 458 N.E.2d 94, 97 (1983). When a child is sought to be adopted, section 17 of the Adoption Act (750 ILCS 50/17 (West 2008)) treats the effect

of an order terminating parental rights the same as an adoption judgment and provides the following:

> "[t]he natural parents of a child sought to be adopted shall be relieved of all parental responsibility for such child and shall be deprived of all legal rights as respects the child, and the child shall be free from all obligations of maintenance and obedience as respects such natural parents."

Section 17 applies to this case as S.G. is clearly "a child sought to be adopted."  750 ILCS 50/17 (West 2008).  Since the termination of parental rights severs the natural parent's rights and interests in the child like an adoption judgment does, it logically follows the termination of parental rights also severs the rights and interests of the natural parent's relatives.

Section 2-4(b) of the Probate Act of 1975 (Probate Act) (755 ILCS 5/2-4(b) (West 2008)), which addresses inheritance from an adopted child, supports the conclusion the rights of the natural parent and the natural parent's relatives are severed upon an adoption judgment and hence an order terminating parental rights.  That section provides the following:

> "An adopting parent and the lineal and collateral kindred of the adopting parent shall inherit property from an adopted child

to the exclusion of the natural parent and the lineal and collateral kindred of the natural parent in the same manner as though the adopted child were a natural child of the adopting parent ***."  755 ILCS 5/2-4(b) (West 2008).

The section does contain one narrow exception allowing a natural parent and his or her kindred to take from a child and the child's kindred "property that the child has taken from or through the natural parent or the lineal or collateral kindred of the natural parent by gift, by will[,] or under intestate laws." 755 ILCS 5/2-4(b) (West 2008).

Likewise, section 2-4(d) of the Probate Act (755 ILCS 5/2-4(d) (West 2008)), which addresses inheritance both from or through a natural parent and for determining the property rights of any person under any instrument after a child has been adopted, declares "an adopted child is not a child of a natural parent, nor is the child a descendant of a natural parent or of any lineal or collateral kindred of a natural parent," unless one or more of three defined conditions applies.  755 ILCS 5/2-4(d) (West 2008).  Those three narrow exceptions are the following:

"(1) The child is adopted by a descendant or a spouse of a descendant of a great-grandparent of the child, in which case

- 21 -

the adopted child is a child of both natural parents.

(2) A natural parent of the adopted child died before the child was adopted, in which case the adopted child is a child of that deceased parent and an heir of the lineal and collateral kindred of that deceased parent.

(3) The contrary intent is demonstrated by the terms of the instrument by clear and convincing evidence."  755 ILCS 5/2-4(d) (West 2008).

Based on the aforementioned case law and statutes, we hold that, when a natural parent's parental rights and interests are completely severed by the termination of parental rights, the rights and interests of the natural parent's relatives are also completely severed.  Thus, the Hixsons had no rights to S.G. Since the Hixsons did not meet the statutory criteria for discretionary intervention, we find the trial court did not abuse its discretion by striking the Hixsons' response to the Bakers' adoption petition.  Last, we note that whether biological grandparents in the Hixsons' position should be allowed to intervene in posttermination adoption proceedings is a matter to be determined by our legislature.

## III. CONCLUSION

For the reasons stated, we dismiss those parts of the appeal for which we lack jurisdiction and affirm the trial court's striking of the Hixsons' response to the Bakers' adoption petition.

Appeal dismissed in part and judgment affirmed in part.

KNECHT and APPLETON, JJ., concur.